UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHAWNDELL ASKEW, | : | Case No. |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| YALE UNIVERSITY and | | |
| ZACKERY BARKER, | : | JULY 18, 2025 |
| Defendants. | | |

**COMPLAINT:**

**I. PARTIES:**

1. The Plaintiff, Shawndell Askew, resides in Meriden, Connecticut 06451. The Plaintiff identifies as a black, or African-American woman and her gender is female.

2. The Defendant, Yale University, is a private corporation with its principal place of business in New Haven, Connecticut 06511.

3. Yale University employs more than 15,000 individuals.

4. The Defendant Zackery Barker resides in East Haven, Connecticut.

**II. JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this case arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. and 29 U.S.C. § 203 (FLSA).

6. The Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), as those claims are so related to the federal claims in this action that they form part of the same case or controversy.

**JURY DEMAND AS TO ALL CLAIMS**

1

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), as the Defendants either have their principal place of business in, or reside in, the Connecticut District and all, or almost all, of the events, actions or omissions giving rise to the claims contained herein occurred in this District.

8. ADMINISTRATIVE EXHAUSTION: The Plaintiff has satisfied all administrative prerequisites to filing suit. She dually filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO"), CHRO No. 2530297 and the Equal Employment Opportunity Commission ("EEOC"), EEOC No. 16A202500326.

9. On April 24, 2025, the CHRO issued a Release of Jurisdiction pursuant to Conn. Gen. Stat. § 46a-100, authorizing Plaintiff to commence a civil action. (See Exhibit A attached.)

10. Plaintiff has brought this action within ninety (90) days of receipt of the Release of Jurisdiction and within the applicable statutory limitations period.

**III. BACKGROUND**

11. Plaintiff has been employed by Yale University as an Account Assistant IV in the Accounts Payable Department since January 18, 2022. Her primary responsibility is processing invoices for payment distribution. Additionally, she is frequently assigned to respond to email inquiries directed to the "Assetworks" email box, separate and distribute invoices to the appropriate departments, research duplicate invoice submissions, and provide coverage for the Process Control System (PCS) position as needed while performing her other duties.

12. In the PCS Position, Plaintiff was responsible for processing invoices for Yale

University's capital projects. Her responsibilities included: verifying the legitimacy of the invoices submitted by ensuring the invoices include the purchase order number and project name; lien waivers are signed and notarized, if applicable; costs are allocated correctly, if applicable; and verifying the "remit to" address is correct. If any of the information is missing or conflicts with existing information in the PCS system, it was Plaintiff's responsibility to contact the supplier/contractor or the Project Assistant/Project Manager for that job to resolve the issue. Plaintiff was also responsible for answering/actioning all emails that pertain to these projects that get directed to the facilities email box.

13. Beginning in approximately October 2023, and continuing to the present, Plaintiff has been the subject of unlawful harassment, discrimination, and retaliation based on her race (African American) and gender (female).

14. In October 2023, Plaintiff verbally reported to her manager, Nichelle Bass, that a co-worker, Matt Dean, was engaging in unethical conduct in his role in the Facilities Department by violating Yale's internal controls policy. Specifically, Mr. Dean was fulfilling two of the three separated roles required to maintain segregation of duties in the accounts payable department. Yale's Guiding Principles for University Operations, Policy Section 1101.6 requires that processing and approving duties be performed by separate employees to deter fraud, detect errors and prevent concealment of irregularities.

15. Plaintiff was required to take ethics training which informed her of her duty to report violations of Yale's internal controls policy. This duty is outlined in Yale's Accountability Policy Section 1101.7. Plaintiff was hired following a widely publicized internal fraud case involving a former Yale employee named Jamie Petrone. Ms. Petrone

had embezzled over $40 million from the University over an eight-year period by exploiting weaknesses in the same internal controls system. Yale implemented additional mandatory training for Accounts Payable staff following the exposure of that fraud, and Plaintiff was instructed to follow strict separation of roles to prevent such misconduct.

16. Plaintiff submitted a formal written report regarding Mr. Dean's conduct to Ms. Bass on January 11, 2024.

17. Thereafter, Mr. Dean began retaliating against the Plaintiff by making defamatory statements about her to co-worker Zackery Barker, asserting that Plaintiff was "incompetent" and "behind in her work." Mr. Barker frequently relayed these disparaging remarks to Plaintiff, often telling her that Mr. Dean was angry with her.

18. Plaintiff verbally had conversations with her manager from October 2023 to January of 2024 regarding Mr. Dean talking negatively about her to Mr. Barker as well as his misconduct. This led to Plaintiff sending her manager the issues in writing on 1/11/24. Ms. Bass was aware of this violation the morning of her return on 1/22/24. Zackery Barker was promoted into the PCS position early February 2024 and Plaintiff did not have any more interaction with Matt Dean.

19. In January 2024, Plaintiff learned that Mr. Barker, who became close with Mr. Dean, was also making the same or similar defamatory statements about her, further contributing to a hostile work environment. Plaintiff reported Mr. Barker's harassment and requested mediation in March 2024.

20. The mediation occurred on April 3, 2024, and was attended by the Plaintiff's supervisor, Nichelle Bass, Ms. Bass's upline manager, Rodney Brunson, the Plaintiff and Mr. Barker. During the mediation, Mr. Barker made several admissions. He admitted to stating that

he "could not stand" Plaintiff, that her "work ethic is poor", and that she "should be terminated." He admitted that his behavior was motivated by an email Plaintiff had sent on February 26, 2024, reminding him that all job-related inquiries should be directed to her or Ms. Bass, rather than to Mr. Dean.

21. Despite Mr. Barker's admissions during the mediation, Plaintiff was made to feel as if she were part of the problem. No actual outcomes were generated as a result of the mediation and Mr. Barker continued to scrutinize, harass and defame the Plaintiff following the mediation.

22. Co-workers continued to approach the Plaintiff to report that Mr. Barker was still making hostile, threatening, unprofessional, inappropriate and defamatory comments about the Plaintiff. Mr. Barker's defamatory statements that the Plaintiff engaged in excessive cell phone use and excessive smoke breaks led to Ms. Bass, the Plaintiff's supervisor, confronting the Plaintiff about these accusations. All of these were false accusations which originated from Mr. Barker.

23. On May 15, 2024, Plaintiff had a quarterly one-on-one meeting with Mr. Brunson during which she expressed serious concerns related to Mr. Barker's anti-social, aggressive, hostile behavior.

24. On October 9, 2024, co-worker Shelby Witherspoon, a friend of Mr. Barker, approached Plaintiff and informed her that although Witherspoon was conflicted, Witherspoon felt compelled to give the Plaintiff a warning about Mr. Barker's statements about her given the safety concerns raised by Mr. Barker's comments to Witherspoon about the Plaintiff. Ms. Witherspoon revealed that Mr. Barker had "an obsession" with "taking [Plaintiff] down," called Plaintiff derogatory names including "lazy" and "ghetto," and falsely

5

claimed she was under investigation and should be fired. Critically, Mr. Barker had stated that he intended to loosen the wheels on the Plaintiff's work chair so she would get seriously injured because of his disdain for her.

25. Ms. Witherspoon also reported that Mr. Barker frequently became extremely animated when discussing Plaintiff. She told Plaintiff she had not been aware of Plaintiff's prior complaints or history with Mr. Barker and Mr. Dean.

26. Ms. Witherspoon herself had been misled by Mr. Barker's false claims about Plaintiff's work performance. She later reported that she was shocked to discover that Plaintiff was not under investigation and that Mr. Barker was not assisting her in any way with her work, contrary to what he had claimed. The additional work that Mr. Barker was doing was work that he had agreed to do for Nichelle Bass and he was compensated monetarily and with overtime.

27. On October 10, 2024, Plaintiff informed Ms. Bass about Ms. Witherspoon's report. Ms. Bass referred to Mr. Barker as her "problem child" and stated she would speak to him upon his return from vacation. Ms. Bass subsequently claimed to have discussed the issue with Mr. Brunson and planned a meeting with HR and Assistant VP Susannah Gobbi, but Mr. Brunson later disclosed to the plaintiff that he became aware of Witherspoon's report the same day that she meet with her union representative, which fell out of the time-period that Ms. Bass claimed to have already discussed this with Mr. Brunson.

28. When no action was taken by management, Plaintiff's co-worker, Chris Owens, contacted union representative Azaria McClure on Plaintiff's behalf. Ms. Witherspoon also reported her concerns to Ms. Bass and HRG Anna Burbank.

29. Plaintiff observed that Mr. Barker, the only white employee in a department otherwise

composed of African American employees, appeared to receive preferential treatment and selective enforcement of Yale University's workplace policies. Despite numerous reports of Mr. Barker's misconduct from multiple sources including a manager, no substantive, corrective action was ever taken against him.

30. Plaintiff's concerns were repeatedly dismissed or minimized. At one point, Ms. Bass said to the Plaintiff "you're from the hood. Just curse his ass out."

31. On October 21, 2024, a Zoom meeting was held involving Plaintiff, her union representative, HR, and Ms. Bass. Mr. Brunson declined to attend the meeting. At that meeting, Plaintiff detailed ongoing harassment and provided HR with a list of 25 incidents involving Mr. Barker. Notably, Plaintiff was not yet aware of the physical threat reported by Ms. Witherspoon, though HR had been made aware of it, according to Ms. Witherspoon.

32. Plaintiff requested a fully remote work arrangement due to safety concerns. This was initially denied but later approved by Mr. Brunson after additional advocacy from her union representative.

33. On November 7, 2024, HRG Anna Burbank informed Plaintiff that the investigation had concluded, but she would not share any findings. A meeting held on November 8, 2024 revealed that the investigation had been conducted by Carmen Piza, who admitted she had not interviewed Plaintiff or been made aware of previous issues, including the problems with Mr. Barker's behavior toward the Plaintiff which led up to the April 2024 mediation.

34. Mr. Barker received only a verbal warning, and no reference was made to harassment or threats. A so-called "safety plan" was instituted, requiring Plaintiff and Mr. Barker to

7

work on alternating days. However, just days later, Mr. Barker knowingly violated this plan by coming to the office on one of Plaintiff's scheduled days.

35. Plaintiff reported the violation to HR, but received no meaningful follow-up. Despite multiple confirmations of Mr. Barker's misconduct from internal and external sources, he continued to receive favorable treatment, including a promotion in February 2024 and public praise at a department meeting on November 22, 2024.

36. Throughout 2023 and 2024, Plaintiff was required cover two full-time positions without additional compensation or overtime, whereas Mr. Barker was paid overtime and received higher hourly wages for assisting with Plaintiff's duties occasionally, even though his pay grade was lower than the Plaintiff's.

37. Despite Plaintiff's extensive qualifications and work ethic, she was subject to false accusations and micromanagement. In contrast, Mr. Barker received praise and advancement.  The Plaintiff repeatedly reported these disparities between how Mr. Barker (white male) was treated as compared to how the Plaintiff (African-American, black woman) was treated. Her complaints to Ms. Bass, Mr. Brunson and HRG Burbank were dismissed or ignored, in violation of Yale University's workplace environment policies.

38. Due to stress, anxiety and depression from the emotional and psychological toll of the continued harassment, retaliation, and lack of an appropriate response and lack of support from Yale University's management and human resources personnel, the Plaintiff ultimately went out of work on approved FMLA leave in April of 2025.  This leave was approved until July 21, 2025.

39. The patterns and practices of Yale University's management and human resources personnel show that race (Black/African American) and gender (female) played a

substantial role in the treatment Plaintiff endured, and that her complaints regarding workplace misconduct and policy violations by Zackery Barker, white male, were downplayed because she is a black woman.

40. Plaintiff also believes that Yale University's failure to adequately address her complaints and to discipline Zackery Barker, who engaged in misconduct in violation of Yale University's policy and in violation of the Plaintiff's civil rights, constitutes a pattern of discriminatory and retaliatory behavior in violation of federal and state law.

**COUNT ONE: Violations of Title VII of the Civil Rights Act of 1964 — Hostile Work Environment (Race and Gender) (42 U.S.C. § 2000e) as against Yale University:**

1. The Plaintiff incorporates paragraphs 1 through 40 in this Count One as though fully set forth herein.

42. Plaintiff, Shawndell Askew, is an African American woman and therefore a member of two protected classes under Title VII of the Civil Rights Act of 1964.

43. Plaintiff was subjected to unwelcome conduct in the workplace, including but not limited to: false accusations, defamatory remarks, threats, racial epithets (ghetto), and other demeaning misconduct by Zackery Barker.

44. This conduct was based on Plaintiff's race and gender as evidenced by Zackery Barker's use of the pejorative, "ghetto" to refer to the Plaintiff and his negative comments about her appearance, her hair, her nails and her clothing.

45. The harassment was severe and pervasive and substantially altered the terms and conditions of Plaintiff's employment by creating a hostile and unsafe work environment in the following ways, but not limited to:

    a. On nearly a daily basis, the Plaintiff would hear from co-workers about Zackery Barker's lies about her;

    b. The Plaintiff was fearful of her physical safety based upon the erratic and hostile behavior and comments by Zackery Barker;

    c. The Plaintiff was fearful of her physical safety based upon reports by co-workers that Zackery Barker wanted to tamper with her work chair so that she would be injured and out of work; Zackery Barker admitted to hating the Plaintiff and wishing her ill will;

    d. Based upon Zackery Barker's defamation of the Plaintiff's work performance, behavior in the workplace and work ethic, the Plaintiff was confronted by her direct manager, Nichelle Bass, and had to refute each falsehood one by one;

    e. Even after rebutting the defamatory accusations by Zackery Barker, the Plaintiff was made to feel that she was being watched and scrutinized by Nichelle Bass.

46. As a direct result of the hostile work environment, Plaintiff suffered mental health deterioration and was forced to take leave under the Family and Medical Leave Act (FMLA).

47. Despite receiving multiple reports from Plaintiff and from corroborating witnesses including a manager, Yale University failed to take prompt and effective remedial action to ensure that the Plaintiff has a safe environment free from intimating racial and gender based ridicule by Zackery Barker and others.

48. The unlawful harassment and lack of action by Yale University created a hostile work environment in violation of Title VII and the Plaintiff's civil rights.

49. As a result of these violations of the Plaintiff's civil rights, she has suffered damages.

**COUNT TWO: Violations of the Connecticut Fair Employment Practices Act (CFEPA) — Hostile Work Environment (Race and Gender) (Conn. Gen. Stat. § 46a-60(b)(1)) as against Yale University:**

1. The Plaintiff incorporates paragraphs 1 through 40 in this Count Two as though fully set forth herein.

42. Plaintiff is a member of a protected class under Conn. Gen. Stat. § 46a-60 as an African American woman.

43. Plaintiff was subjected to unwelcome conduct in the workplace, including but not limited to: false accusations, defamatory remarks, threats, racial epithets (ghetto), and other demeaning misconduct by Zackery Barker.

44. This conduct was based on Plaintiff's race and gender as evidenced by Zackery Barker's use of the pejorative, "ghetto" to refer to the Plaintiff and his negative comments about her appearance, her hair, her nails and her clothing.

45. The harassment was severe and pervasive and substantially altered the terms and conditions of Plaintiff's employment by creating a hostile and unsafe work environment in the following ways, but not limited to:

    1. On nearly a daily basis, the Plaintiff would hear from co-workers about Zackery Barker's lies about her;
    2. The Plaintiff was fearful of her physical safety based upon the erratic and hostile behavior and comments by Zackery Barker;
    3. The Plaintiff was fearful of her physical safety based upon reports by co-workers that Zackery Barker wanted to tamper with her work chair so that she would be injured and out of work; Zackery Barker admitted to hating the Plaintiff and wishing her ill will;

11

    4. Based upon Zackery Barker's defamation of the Plaintiff's work performance, behavior in the workplace and work ethic, the Plaintiff was confronted by her direct manager, Nichelle Bass, and had to refute each falsehood one by one;

    5. Even after rebutting the defamatory accusations by Zackery Barker, the Plaintiff was made to feel that she was being watched and scrutinized by Nichelle Bass.

46. As a direct result of the hostile work environment, Plaintiff suffered mental health deterioration and was forced to take leave under the Family and Medical Leave Act (FMLA).

47. Despite receiving multiple reports from Plaintiff and from corroborating witnesses including a manager, Yale University failed to take prompt and effective remedial action to ensure that the Plaintiff has a safe environment free from intimating racial and gender based ridicule by Zackery Barker and others.

48. The unlawful harassment and lack of action by Yale University created a hostile work environment in violation of CFEPA, Conn. Gen. Stat. § 46a-60(b)(1), and the Plaintiff's civil rights.

49. As a result of these violations of the Plaintiff's civil rights, she has suffered damages.

**COUNT THREE: Violations of Title VII of the Civil Rights Act of 1964 — Retaliation (42 U.S.C. § 2000e-3) as against Yale University:**

1. The Plaintiff incorporates paragraphs 1 through 40 in this Count Three as though fully set forth herein.

42. Plaintiff engaged in protected activity under Title VII by reporting racially and sexually discriminatory conduct to her supervisor Nichelle Bass, to her supervisor's manager

Rodney Brunson, to human resources and Anna Burbank, and to the OIEA office of Yale University.

43. Plaintiff also filed complaints with the Connecticut Commission on Human Rights and Opportunities (CHRO) with a dual filing with the EEOC, which is a protected activity under federal law.

44. Following her complaints, Plaintiff was subjected to retaliatory treatment by Yale University agents and employees including, but not limited to:

   a. increased scrutiny of her work by Nichelle Bass;

   b. false accusations of poor performance by Nichelle Bass;

   c. isolation from co-workers, exclusion from communications, and redistribution of her work by Nichelle Bass;

   d. marginalization of her role by Nichelle Bass;

   e. targeting of Plaintiff with baseless disciplinary concerns by Nichelle Bass;

   f. denial by Yale University of reasonable workplace accommodations to ensure the Plaintiff's safety;

   g. ongoing defamatory statements intended to damage her professional reputation by Nichelle Bass, Zackery Barker and others: and,

   h. creating a work environment so hostile that she was forced to take FMLA leave.

45. The retaliatory conduct materially affected the conditions of Plaintiff's employment, caused emotional distress, and contributed to Plaintiff's need to take protected leave under the FMLA.

46. The Plaintiff incorporates paragraphs 1 through 40 in this Count Four as though fully set forth herein.

47. Defendant's actions constitute unlawful retaliation in violation of 42 U.S.C. § 2000e-3(a) and caused the Plaintiff damages.

**COUNT FOUR: Violations of the Connecticut Fair Employment Practices Act (CFEPA) — Retaliation (Conn. Gen. Stat. § 46a-60(b)(4)) as against Yale University:**

1. The Plaintiff incorporates paragraphs 1 through 40 in this Count Four as though fully set forth herein.

42. Plaintiff engaged in protected activity under CFEPA by reporting discriminatory and harassing conduct to her supervisor Nichelle Bass, to her supervisor's manager Rodney Brunson, to human resources and Anna Burbank, and to the OIEA office of Yale University.

43. Plaintiff also filed complaints with the Connecticut Commission on Human Rights and Opportunities (CHRO) with a dual filing with the EEOC, which is a protected activity under state and federal civil rights law.

44. Following her complaints, Plaintiff was subjected to retaliatory treatment by Yale University agents and employees including, but not limited to:

    a. increased scrutiny of her work by Nichelle Bass;

    b. false accusations of poor performance by Nichelle Bass;

    c. isolation from co-workers, exclusion from communications, and redistribution of her work by Nichelle Bass;

    d. marginalization of her role by Nichelle Bass;

    e. targeting of Plaintiff with baseless disciplinary concerns by Nichelle Bass;

    f. denial by Yale University of reasonable workplace accommodations to ensure the Plaintiff's safety;

    1. ongoing defamatory statements intended to damage her professional reputation

       by Nichelle Bass, Zackery Barker and others: and,

  2. creating a work environment so hostile that she was forced to take FMLA leave.

45. The retaliatory conduct materially affected the conditions of Plaintiff's employment, caused her emotional distress, and contributed to Plaintiff's need to take protected leave under the FMLA.

46. The Defendant Yale University, its agents and employees were all aware of Plaintiff's protected activity when the retaliatory conduct occurred.

47. Defendant's retaliatory actions violated CFEPA, Conn. Gen. Stat. § 46a-60(b)(4) and caused the Plaintiff damages.

**COUNT FIVE: Violations of the Fair Labor Standards Act (FLSA) — Unpaid Wages and Overtime (29 U.S.C. § 201) as against Yale University:**

1. The Plaintiff incorporates paragraphs 1 through 40 in this Count Five as though fully set forth herein.

42. Plaintiff was an employee of Defendant Yale University within the meaning of the Fair Labor Standards Act.

43. Plaintiff routinely worked in excess of 40 hours per week, particularly during extended periods between September 2023 and February 2024, when she was required to perform the duties of two full-time positions simultaneously without proper compensation.

44. The Plaintiff would often go home after working a full day and then log onto her work laptop and continue working that evening.

45. The Plaintiff asked Nichelle Bass, her direct supervisor, to authorize compensation for this extra work, as well as overtime, and was denied.

46. Nichelle Bass did assign Zackery Barber to assist with some of the work for the two full time positions the Plaintiff was covering and he was approved a $1.00 per hour

differential as well as some overtime by Nichelle Bass.

47. Defendant failed to compensate Plaintiff at a rate of one and one-half times her regular rate of pay for all hours worked in excess of forty hours per week, despite Plaintiff performing substantially more work than her white male colleague, Zackery Barker, who received additional pay and overtime for less labor.

48. Defendant's failure to pay proper wages and overtime was willful and not in good faith. Defendant refused Plaintiff's requests for compensation or overtime while knowingly allowing unequal pay based on discriminatory and retaliatory motives.

**COUNT SIX: Violations of the Connecticut Minimum Wage Act — Unpaid Wages and Overtime (Conn. Gen. Stat. § 31-58) as against Yale University:**

1. The Plaintiff incorporates paragraphs 1 through 40, and paragraphs 42 through 48 of Count Five, into this Count Six as though fully set forth herein.

49. Plaintiff was an employee within the meaning of Conn. Gen. Stat. § 31-58.

50. Plaintiff performed substantial work for which compensation was due, including repeated instances of working beyond her regular schedule, while she covered two full-time positions (her assigned position and the unfilled PCS position), without compensation, hourly pay or overtime compensation.

51. Defendant failed to pay Plaintiff earned wages and overtime pay as required under Conn. Gen. Stat. § 31-60 and denied compensation for her additional work while allowing similarly situated white male employees, such as Zackery Barker, to receive overtime pay and enhanced hourly rates.

52. Defendant failed to pay wages due within the statutory time frame under Conn. Gen. Stat. § 31-71b, despite Plaintiff's repeated requests for compensation for work performed.

53. Defendant's actions were knowing, willful, and without a good faith basis. The failure to compensate Plaintiff equitably is further evidence of racial, gender/sex and retaliatory discrimination as prohibited under Connecticut law.

**COUNT SEVEN: Violations of the Equal Pay Act (29 U.S.C. § 206) as against Yale University:**

1. The Plaintiff incorporates paragraphs 1 through 40, and paragraphs 42 through 48 of Count Five, and paragraph 49 through 53 of Count Six into this Count Seven as though fully set forth herein.

54. The Plaintiff, a woman, was performing work that was "equal" in terms of skill, effort, and responsibility, and performed under similar working conditions as her male colleague, Zackery Barker, yet was not allowed overtime or a $1.00 per hour supplement like her male colleague, Zackery Barker.

55. Defendant Yale University's failure to compensate the Plaintiff for work she performed that was "equal" in terms of skill, effort, and responsibility, and performed under similar working conditions as her male colleague, Zackery Barker, constitutes a violation of the Fair Pay Act.

56. As a result of Yale University's violations of the Fair Pay Act, the Plaintiff has suffered damages.

**COUNT EIGHT: Defamation: as Against Defendant Zackery Barker:**

1. The Plaintiff incorporates paragraphs 1 through 40 in this Count Seven as though fully set forth herein.

42. At all relevant times, Zackery Barker was employed by Yale University and worked in proximity to Plaintiff in the Accounts Payable Department.

43. Beginning in or around October 2023, Defendant Zackery Barker made repeated false and defamatory statements about Plaintiff, both orally and in writing, to Yale management, to other Yale employees and/or to third parties.

44. These statements included knowingly false claims concerning Plaintiff's work performance and work quality, professionalism and conduct in the workplace.

45. Defendant Barker made these statements with actual malice or with reckless disregard for the truth, knowing that the statements were false or with serious doubts as to their truth.

46. These false statements were not privileged and were made outside the scope of any lawful employment purpose.

47. Defendant Barker's conduct constitutes defamation under Connecticut common law.

48. As a direct and proximate result of Defendant Barker's defamatory statements, Plaintiff suffered damage to her reputation, humiliation, emotional distress, and other monetary damages.

**WHEREFORE**, the Plaintiff claims and petitions this Honorable Court for the following:

1) Compensatory money damages;

2) Double damages pursuant to Conn. Gen. Stat. § 31-68(a)(1)(A);

3) Reasonable attorney fees pursuant to Conn. Gen. Stat. § 31-68;

4) Reasonable attorney fees pursuant to Conn. Gen. Stat. § 46a-104;

5) Reasonable attorney fees pursuant to 42 U.S.C. § 2000e-5(k);

6) Reasonable costs of bringing this lawsuit pursuant to Conn. Gen. Stat. § 31-68(a)(1)(A);

7) Reasonable costs of bringing this lawsuit pursuant to Conn. Gen. Stat. § 46a-104;

8) Prejudgment interest on unpaid wages pursuant to Conn. Gen. Stat. § 37-3a;

9) Punitive damages for willful, wanton or reckless defamation; and,

9) Such other relief as the court deems appropriate.

## JURY DEMAND AS TO ALL CLAIMS

The Plaintiff,
SHAWNDELL ASKEW

By: *Kay Wilson*
Kay Wilson, Esq., Juris ct16084
Parrett Porto Parese & Colwell, PC
2319 Whitney Ave., Suite 1-D
Hamden, CT 06518
(203)281-2700  Tele.
(860)559-3733  Mobile
(203)281-0700  Fax
KWilson@PPPCLaw.com