**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |  |
|---|---|---|
| | : | |
| SHAWNDELL ASKEW, | : | Case No.  3:25-cv-01146-JCH |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| YALE UNIVERSITY and | | |
| ZACKERY BARKER, | : | SEPTEMBER 16, 2025 |
| Defendants. | | |

**FIRST AMENDED COMPLAINT:**

### I. PARTIES:

1. The Plaintiff, Shawndell Askew, resides in Meriden, Connecticut 06451. The Plaintiff identifies as a black, or African-American woman and her gender is female.

2. The Defendant, Yale University, is a private corporation with its principal place of business in New Haven, Connecticut 06511.

3. Yale University employs more than 15,000 individuals.

4. The Defendant Zackery Barker resides in East Haven, Connecticut.

### II. JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this case arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. and 29 U.S.C. § 203 (FLSA).

6. The Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), as those claims are so related to the federal claims in this action that they form part of the same case or controversy.

## JURY DEMAND AS TO ALL CLAIMS

1

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), as the Defendants either have their principal place of business in, or reside in, the Connecticut District and all, or almost all, of the events, actions or omissions giving rise to the claims contained herein occurred in this District.

8. ADMINISTRATIVE EXHAUSTION: The Plaintiff has satisfied all administrative prerequisites to filing suit. She dually filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO"), CHRO No. 2530297 and the Equal Employment Opportunity Commission ("EEOC"), EEOC No. 16A202500326.

9. On April 24, 2025, the CHRO issued a Release of Jurisdiction pursuant to Conn. Gen. Stat. § 46a-100, authorizing Plaintiff to commence a civil action. (See Exhibit A attached.)

10. Plaintiff has brought this action within ninety (90) days of receipt of the Release of Jurisdiction and within the applicable statutory limitations period.

## III. BACKGROUND

11. Plaintiff has been employed by Yale University as an Account Assistant IV in the Accounts Payable Department since January 18, 2022. Her primary responsibility is processing invoices for payment distribution. Additionally, she is frequently assigned to respond to email inquiries directed to the "Assetworks" email box, separate and distribute invoices to the appropriate departments, research duplicate invoice submissions, and provide coverage for the Process Control System (PCS) position as needed while performing her other duties.

12. In the PCS Position, Plaintiff was responsible for processing invoices for Yale

University's capital projects. Her responsibilities included: verifying the legitimacy of the invoices submitted by ensuring the invoices include the purchase order number and project name; lien waivers are signed and notarized, if applicable; costs are allocated correctly, if applicable; and verifying the "remit to" address is correct. If any of the information is missing or conflicts with existing information in the PCS system, it was Plaintiff's responsibility to contact the supplier/contractor or the Project Assistant/Project Manager for that job to resolve the issue. Plaintiff was also responsible for answering/actioning all emails that pertain to these projects that get directed to the facilities email box.

13. Beginning in approximately October 2023, and continuing to the present, Plaintiff has been the subject of unlawful harassment, discrimination, and retaliation based on her race (African American) and gender (female).

14. In October 2023, Plaintiff verbally reported to her manager, Nichelle Bass, that a co-worker, Matt Dean, was engaging in unethical conduct in his role in the Facilities Department by violating Yale's internal controls policy. Specifically, Mr. Dean was fulfilling two of the three separated roles required to maintain segregation of duties in the accounts payable department. Yale's Guiding Principles for University Operations, Policy Section 1101.6 requires that processing and approving duties be performed by separate employees to deter fraud, detect errors and prevent concealment of irregularities.

15. Plaintiff was required to take ethics training which informed her of her duty to report violations of Yale's internal controls policy. This duty is outlined in Yale's Accountability Policy Section 1101.7. Plaintiff was hired following a widely publicized internal fraud case involving a former Yale employee named Jamie Petrone. Ms. Petrone

had embezzled over $40 million from the University over an eight-year period by exploiting weaknesses in the same internal controls system. Yale implemented additional mandatory training for Accounts Payable staff following the exposure of that fraud, and Plaintiff was instructed to follow strict separation of roles to prevent such misconduct.

16. Plaintiff submitted a formal written report regarding Mr. Dean's conduct to Ms. Bass on January 11, 2024.

17. Thereafter, Mr. Dean began retaliating against the Plaintiff by making defamatory statements about her to co-worker Zackery Barker, asserting that Plaintiff was "incompetent" and "behind in her work." Mr. Barker frequently relayed these disparaging remarks to Plaintiff, often telling her that Mr. Dean was angry with her.

18. Plaintiff verbally had conversations with her manager from October 2023 to January of 2024 regarding Mr. Dean talking negatively about her to Mr. Barker as well as his misconduct. This led to Plaintiff sending her manager the issues in writing on 1/11/24. Ms. Bass was aware of this violation the morning of her return on 1/22/24. Zackery Barker was promoted into the PCS position early February 2024 and Plaintiff did not have any more interaction with Matt Dean.

19. In January 2024, Plaintiff learned that Mr. Barker, who became close with Mr. Dean, was also making the same or similar defamatory statements about her, further contributing to a hostile work environment. Plaintiff reported Mr. Barker's harassment to Nichelle Bass and Rodney Brunson and requested mediation in March 2024.

20. The mediation occurred on April 3, 2024, and was attended by the Plaintiff's supervisor, Nichelle Bass, Ms. Bass's upline manager, Rodney Brunson, the Plaintiff and Mr. Barker. During the mediation, Mr. Barker made several admissions.  He admitted to stating that

he "could not stand" Plaintiff, that her "work ethic is poor", and that she "should be terminated." He admitted that his behavior was motivated by his upset at receiving what reasonable people would consider an innocuous email from the Plaintiff on February 26, 2024, reminding him that all job-related inquiries should be directed to her or Ms. Bass, rather than to Mr. Dean.

21. Despite Mr. Barker's admissions during the mediation, Plaintiff was made to feel as if she were part of the problem.  Both Bass and Brunson treated the situation like a mere co-worker squabble and told the Plaintiff to try to get along with Barker.  No actual outcomes were generated as a result of the mediation and Mr. Barker continued to scrutinize, harass and defame the Plaintiff following the mediation.

22. Co-workers continued to approach the Plaintiff to report that Mr. Barker was still making hostile, threatening, unprofessional, inappropriate and defamatory comments about the Plaintiff. Mr. Barker's defamatory statements that the Plaintiff engaged in excessive cell phone use and excessive smoke breaks led to Ms. Bass, the Plaintiff's supervisor, confronting the Plaintiff about these accusations. All of these were false accusations which originated from Mr. Barker.

23. On May 15, 2024, Plaintiff had a quarterly one-on-one meeting with Mr. Brunson during which she expressed serious concerns related to Mr. Barker's anti-social, aggressive, hostile behavior.

24. On October 9, 2024, co-worker Shelby Witherspoon, a friend of Mr. Barker, approached Plaintiff and informed her that although Witherspoon felt conflicted about reporting on her friend, Witherspoon felt compelled to give the Plaintiff a warning about Zackery Barker's statements about thePlaintiff given the safety concerns raised by Barker's

comments to Witherspoon about the Plaintiff. Ms. Witherspoon revealed that Mr. Barker had "an obsession" with "taking [Plaintiff] down," called Plaintiff derogatory names including "lazy" and "ghetto," and falsely claimed she was under investigation and should be fired. Critically, Mr. Barker had stated that he intended to loosen the wheels on the Plaintiff's work chair so she would "break her neck" or get seriously injured because of his disdain for her.

25. Ms. Witherspoon also reported that Mr. Barker frequently became extremely agitated and animated when discussing Plaintiff. She told Plaintiff she had not been aware of Plaintiff's prior complaints about Zackery Barker and Mr. Dean.

26. Ms. Witherspoon herself had been misled by Mr. Barker's false claims about Plaintiff's work performance. She later reported that she was shocked to discover that Plaintiff was not under investigation, contrary to what he had claimed. The additional work that Mr. Barker was doing was work which he had agreed to do for Nichelle Bass to cover some of the Plaintiff's duties as the Plaintiff was covering an unfilled position ("Process Control System"). In addition, Barker was compensated monetarily with a additional one dollar per hour supplement and with overtime.

27. On October 10, 2024, Plaintiff informed Ms. Bass about Ms. Witherspoon's report. Ms. Bass referred to Mr. Barker as her "problem child" and stated she would speak to him upon his return from vacation. Ms. Bass subsequently told the Plaintiff that she had discussed the issue with Mr. Brunson and planned a meeting with HR and Assistant VP Susannah Gobbi, but Mr. Brunson later disclosed to the Plaintiff that he became aware of Witherspoon's report much later than Bass indicated she had communicated with Brunson.

28. When no action was taken by Bass or Brunson, Plaintiff's co-worker, Chris Owens, contacted union representative Azaria McClure on Plaintiff's behalf.  At about the same time, Ms. Witherspoon also independently reported her concerns to Ms. Bass and HRG Anna Burbank.

29. Plaintiff observed that Mr. Barker, the only white employee in a department otherwise composed of African American employees, appeared to receive preferential treatment and less stringent enforcement of Yale University's workplace policies as compared to African American employees in his department. Despite numerous reports of Mr. Barker's misconduct from multiple sources including a manager, Patti Taylor, no substantive, corrective action was ever taken against him.

30. Plaintiff's concerns were repeatedly dismissed or minimized. At one point, in response to a complaint by the Plaintiff about Barker's behavior, Ms. Bass said to the Plaintiff "you're from the hood. Just curse his ass out."

31. On October 21, 2024, a Zoom meeting was held involving Plaintiff, her union representative, HRG Anna Burbank, and Ms. Bass. Mr. Brunson declined to attend the meeting. At that meeting, Plaintiff detailed ongoing harassment and provided HR with a list of 25 incidents involving Mr. Barker. Notably, at this point the Plaintiff had not yet been made aware of the physical threat reported by Ms. Witherspoon, though HR had already been made aware of it, according to Ms. Witherspoon.

32. Plaintiff requested a fully remote work arrangement due to her unease and her safety concerns. This was initially denied but later approved by Mr. Brunson after additional advocacy from the Plaintiff's union representative.

33. On November 7, 2024, HRG Anna Burbank informed Plaintiff that the investigation had

concluded, but she would not share any findings. A meeting held on November 8, 2024 revealed that the investigation had been conducted by Carmen Piza, who admitted she had not interviewed Plaintiff or been made aware of previous issues, including the problems with Mr. Barker's behavior toward the Plaintiff which led up to the April 2024 prior mediation.

34. Mr. Barker received merely a verbal warning, and no reference was made to harassment or threats. A so-called "safety plan" was drafted by HRG Burbank, requiring Plaintiff and Mr. Barker to work on alternating days. However, just days later, Mr. Barker knowingly violated this plan by coming to the office on one of Plaintiff's scheduled days.

35. Plaintiff reported the violation to HRG Burbank, but received no meaningful follow-up. Despite multiple confirmations of Mr. Barker's misconduct from internal and external sources, he continued to receive favorable treatment, including public praise at a department meeting on November 22, 2024 and a promotion in February of 2024.

36. Throughout 2023 and 2024, Plaintiff was required cover two full-time positions without additional compensation or overtime, whereas Mr. Barker was paid overtime and received higher hourly wages for assisting with Plaintiff's coverage of these duties occasionally, even though his pay grade was lower than the Plaintiff's at that time.

37. Despite Plaintiff's extensive qualifications and work ethic, she was subject to false accusations and micromanagement. In contrast, Mr. Barker received praise and advancement.  The Plaintiff repeatedly reported these disparities between how Mr. Barker (white male) was treated as compared to how the Plaintiff (African-American, black woman) was treated. Her complaints to Ms. Bass, Mr. Brunson and HRG Burbank were dismissed or ignored, in violation of Yale University's workplace environment policies.

38. Due to stress, anxiety and depression from the emotional and psychological toll of the continued harassment, retaliation, and lack of an appropriate response and lack of support from Yale University's management and human resources personnel, the Plaintiff ultimately went out of work on approved FMLA leave in April of 2025.  This leave was approved until July 21, 2025.

39. The patterns and practices of Yale University's management and human resources personnel show that race (Black/African American) and gender (female) played a substantial role in the treatment Plaintiff endured, and that her complaints regarding workplace misconduct and policy violations by Zackery Barker, white male, were downplayed because Zackery Barker is the only white male in the department and the Plaintiff is an African American woman.

40. Plaintiff also believes that Yale University's failure to adequately address her complaints and to discipline Zackery Barker, who engaged in misconduct in violation of Yale University's policies and in violation of the Plaintiff's civil rights, and the increased scrutiny of her work constitutes a pattern of discriminatory and retaliatory behavior in violation of federal and state law.

**COUNT ONE: Violations of Title VII of the Civil Rights Act of 1964 — Hostile Work Environment (Race and Gender) (42 U.S.C. § 2000e) as against Yale University:**

1. The Plaintiff incorporates paragraphs 1 through 40 in this Count One as though fully set forth herein.

41. Plaintiff, Shawndell Askew, is an African American woman and therefore a member of two protected classes under Title VII of the Civil Rights Act of 1964.

42. Plaintiff was subjected to unwelcome conduct in the workplace, including but not limited to false accusations, defamatory remarks, threats, racial epithets (ghetto), and

other persistent harassing and demeaning misconduct by Zackery Barker.

43. This conduct was based on Plaintiff's race and gender as evidenced by Zackery Barker's use of the pejorative, "ghetto" to refer to the Plaintiff and his negative comments about her appearance, her hair, her nails and her clothing.

44. The harassment was severe and pervasive and substantially altered the terms and conditions of Plaintiff's employment by creating a hostile and unsafe work environment in the following ways, but not limited to:

    a. On nearly a daily basis, the Plaintiff would hear from co-workers about Zackery Barker's lies about her work performance, her personal life and slurs about her appearance;

    b. The Plaintiff was fearful of her physical safety based upon the erratic and hostile behavior and comments by Zackery Barker, including his confession to a female co-worker and friend that he fantasized about sabotaging the Plaintiff's chair so she would fall, "break her neck", and go out of work with an injury;

    c. The Plaintiff was fearful of her physical safety based upon reports by co-workers that Zackery Barker admitted to hating the Plaintiff's guts and wishing her ill;

    d. Based upon Zackery Barker's defamation of the Plaintiff's work performance and work ethic, the Plaintiff was confronted by her direct manager, Nichelle Bass, and had to refute each falsehood one by one;

    e. Even after rebutting the defamatory accusations by Zackery Barker, the Plaintiff was made to feel that she was being watched and

scrutinized by Nichelle Bass and experienced heightened scrutiny of her work performance by Bass;

f. Yale University's failure to take the threats to the Plaintiff by Barker and defamation of the Plaintiff's work quality and the admitted hostility Barker had toward the Plaintiff created a feeling of utter unease, vulnerability and jeopardy in the Plaintiff about her safety in the workplace environment at Yale University; and,

g. As part of the heightened scrutiny of her work, Nichelle Bass criticized the Plaintiff and provided guidance suggesting how long the Plaintiff should take on each of her tasks, which added up to over nine (9) hours of daily work, though the Plaintiff was required to finish her work within 7.5 hours per day for a total work week of 37.5 hours.

45. As a direct result of the hostile work environment, Plaintiff suffered mental health deterioration, sought mental health treatment and was forced to take leave under the Family and Medical Leave Act (FMLA) under an authorization by her mental health professional.

46. Despite receiving multiple reports from Plaintiff and from corroborating witnesses including a manager, Patti Taylor, Yale University failed to take prompt and effective remedial action to ensure that the Plaintiff had a safe environment free from intimating racial and gender based ridicule, harassment and threats by Zackery Barker and others.

47. The unlawful harassment and lack of action by Yale University created a hostile work environment in violation of Title VII and the Plaintiff's civil rights.

48. As a result of these violations of the Plaintiff's civil rights, she has suffered damages.

**COUNT TWO: Violations of the Connecticut Fair Employment Practices Act (CFEPA) — Hostile Work Environment (Race and Gender) (Conn. Gen. Stat. § 46a-60(b)(1)) as against Yale University:**

1.  The Plaintiff incorporates paragraphs 1 through 48 in this Count Two as though fully set forth herein.

49. Plaintiff is a member of two protected classes under Conn. Gen. Stat. § 46a-60 as an African American woman.

50. Plaintiff was subjected to unwelcome conduct in the workplace, including but not limited to: false accusations, defamatory remarks, threats, racial epithets (ghetto), and other persistent demeaning misconduct by Zackery Barker.

51. This conduct was based on Plaintiff's race and gender as evidenced by Zackery Barker's use of the pejorative, "ghetto" to refer to the Plaintiff and his negative comments about her appearance, her hair, her nails and her clothing.

52. The unlawful harassment and lack of action by Yale University created a hostile work environment in violation of CFEPA, Conn. Gen. Stat. § 46a-60(b)(1), and the Plaintiff's civil rights.

53. The unlawful harassment created a hostile work environment which adversely affected the mental state of the Plaintiff and had attendant deleterious effects on her such as decreasing her productivity and work performance and creating anxiety, depression and physical symptoms from her stress.

54. As a result of these violations of the Plaintiff's civil rights, she has suffered damages.

**COUNT THREE: Violations of Title VII of the Civil Rights Act of 1964 — Retaliation (42 U.S.C. § 2000e-3) as against Yale University:**

1.  The Plaintiff incorporates paragraphs 1 through 54 of Count Two into this Count Three,

as though fully set forth herein.

55. Plaintiff engaged in protected activity under Title VII by repeatedly reporting the racially and sexually discriminatory conduct by barker to her supervisor Nichelle Bass, to her supervisor's manager Rodney Brunson, to human resources and Anna Burbank, and to the Office of Institutional Equity and Accessibility ("OIEA") office of Yale University starting in early 2024.

56. Plaintiff also filed complaints with the Connecticut Commission on Human Rights and Opportunities (CHRO) with a dual filing with the EEOC, which is a protected activity under federal law.

57. Following her complaints, Plaintiff was subjected to retaliatory treatment by Yale University agents and employees including, but not limited to:

   a. increased scrutiny of her work and productivity by Nichelle Bass;

   b. false accusations of poor performance by Nichelle Bass;

   c. isolation from co-workers, exclusion from communications, and redistribution of her work by Nichelle Bass;

   d. marginalization of her role by Nichelle Bass;

   e. targeting of Plaintiff with baseless disciplinary concerns by Nichelle Bass;

   f. denial by Yale University of reasonable workplace accommodations to ensure the Plaintiff's safety;

   g. failure by Yale Universty to uphold its safety plan developed by HRG Burbank to protect the Plaintiff from Zackery Barker's hostility, harassment, anti-social behavior, threats and intimidation;

   g. ongoing defamatory statements intended to damage her professional reputation

by Nichelle Bass, Zackery Barker and others: and,

h.   creating a work environment so hostile that she experienced mental health issues, physical symptoms and was forced to take FMLA leave to recover.

58. The retaliatory conduct materially affected the conditions of Plaintiff's employment, caused emotional distress, and contributed to Plaintiff's need to take protected leave under the FMLA to take care of her mental health.

59. Defendant's actions constitute unlawful retaliation in violation of 42 U.S.C. § 2000e-3(a) and caused the Plaintiff damages.

**COUNT FOUR: Violations of the Connecticut Fair Employment Practices Act (CFEPA) — Retaliation (Conn. Gen. Stat. § 46a-60(b)(4)) as against Yale University:**

1.  The Plaintiff incorporates paragraphs 1 through 59 of Count Two into this Count Four as though fully set forth herein.

60. Plaintiff engaged in protected activity under CFEPA by reporting the discriminatory and harassing conduct of Barker to her supervisor Nichelle Bass, to her supervisor's manager Rodney Brunson, to human resources and Anna Burbank, and to the OIEA office of Yale University starting in early 2024.

61. Plaintiff also filed complaints with the Connecticut Commission on Human Rights and Opportunities (CHRO) with a dual filing with the EEOC, which is a protected activity under state and federal civil rights law.

62. Following her complaints, Plaintiff was subjected to retaliatory treatment by Yale University agents and employees including, but not limited to:

a.   increased scrutiny of her work and productivity by Nichelle Bass;

b.   false accusations of poor performance by Nichelle Bass;

c.   isolation from co-workers, exclusion from communications, and redistribution of

her work by Nichelle Bass;

d.  marginalization of her role by Nichelle Bass;

e.  targeting of Plaintiff with baseless disciplinary concerns by Nichelle Bass;

f.  denial by Yale University of reasonable workplace accommodations to ensure the Plaintiff's safety;

g.  failure by Yale Universty to uphold its safety plan developed by HRG Burbank to protect the Plaintiff from Zackery Barker's hostility, harassment, anti-social behavior, threats and intimidation;

i.  ongoing defamatory statements intended to damage her professional reputation by Nichelle Bass, Zackery Barker and others: and,

j.  creating a work environment so hostile that she experienced mental health issues, physical symptoms and was forced to take FMLA leave to recover.

63. The retaliatory conduct materially affected the conditions of Plaintiff's employment, caused her emotional distress, impacted her work and contributed to Plaintiff's need to take protected leave under the FMLA.

64. The Defendant Yale University, its agents and employees were all aware of Plaintiff's protected activity when the retaliatory conduct occurred.

65. Defendant's retaliatory actions violated CFEPA, Conn. Gen. Stat. § 46a-60(b)(4) and caused the Plaintiff damages.

**COUNT FIVE: Violations of the Fair Labor Standards Act (FLSA) — Unpaid Wages and Overtime (29 U.S.C. § 201) as against Yale University:**

1.  The Plaintiff incorporates paragraphs 1 through 40 in this Count Five as though fully set forth herein.

41. Plaintiff was an employee of Defendant Yale University and Yale University is an

15

employer within the meaning of the Fair Labor Standards Act.

42. Plaintiff routinely worked in excess of 37.5 hours per week and many times in excess of 37.5 hours per week and many times in excess of 40 hours per week, particularly during extended periods between September 2023 and February 2024, when she was required to perform the duties of two full-time positions simultaneously without proper compensation.

43. Plaintiff performed substantial work for which compensation was due, including repeated instances of working beyond her regular schedule, while she covered two full-time positions (her assigned position and the unfilled PCS position), without compensation, hourly pay or overtime compensation.

44. The Plaintiff would often go home after working a full day and then log onto her work laptop and continue working that evening just to complete the combined workload for both positions.

45. The Plaintiff asked Nichelle Bass, her direct supervisor, to authorize compensation for this extra work, as well as overtime, and was denied by Nichelle Bass.

46. Nichelle Bass did assign Zackery Barber to assist with some of the work for the two full time positions the Plaintiff was covering and he was approved an additional $1.00 per hour differential as well as some overtime by Nichelle Bass.

47. Defendant failed to compensate Plaintiff at a rate of one and one-half times her regular rate of pay for all hours worked in excess of 37.5 hours per week and many times in excess of 40 hours per week , despite Plaintiff performing substantially more work than her white male colleague, Zackery Barker, who received additional pay and overtime for the same tasks.

16

48. Defendant's failure to pay proper wages and overtime was willful and not in good faith. Defendant refused Plaintiff's requests for compensation or overtime while knowingly allowing unequal compensation for Plaintiff as compared to Zackery Barker and based on discriminatory and retaliatory motives.

49. As a result of not receiving all wages to which the Plaintiff is entitled pursuant to FLSA, she suffered damages.

**COUNT SIX: Violations of the Connecticut Minimum Wage Act — Unpaid Wages and Overtime (Conn. Gen. Stat. § 31-58) as against Yale University:**

1. The Plaintiff incorporates paragraphs 1 through 47 of Count Five, into this Count Six as though fully set forth herein.

48. Plaintiff was an employee within the meaning of Conn. Gen. Stat. § 31-58, *et seq*.

49. Yale University is an employer within the meaning of Conn. Gen. Stat. § 31-58, *et seq*.

50. Plaintiff routinely worked in excess of 37.5 hours per week and many times in excess of 40 hours per week, particularly during extended periods between September 2023 and February 2024, when she was required to perform the duties of two full-time positions simultaneously without proper compensation.

51. Plaintiff performed substantial work for which compensation was due, including repeated instances of working beyond her regular schedule, while she covered two full-time positions (her assigned position and the unfilled PCS position), without commensurate compensation, hourly pay or overtime compensation.

52. Defendant failed to pay Plaintiff earned wages and overtime pay as required under Conn. Gen. Stat. § 31-60, and denied compensation for her additional work while allowing similarly situated white male employees, such as Zackery Barker, to receive overtime pay and enhanced hourly rates.

53. Defendant failed to pay wages due within the statutory time frame under Conn. Gen. Stat. § 31-71b, despite Plaintiff's repeated requests for compensation for work performed.

54. Defendant's actions were knowing, willful, and without a good faith basis.

55. As a result of not receiving all wages to which the Plaintiff is entitled pursuant to CMWA, she suffered damages.

**COUNT SEVEN: Violations of the Equal Pay Act (29 U.S.C. § 206) as against Yale University:**

1. The Plaintiff incorporates paragraphs 1 through 54 of Count Six as though fully set forth herein in this Count Seven.

54. The Plaintiff, a woman, was performing work that was "equal" in terms of skill, effort, and responsibility, and performed under similar working conditions as her male colleague, Zackery Barker, yet was not allowed overtime or a $1.00 per hour supplement like her male colleague, Zackery Barker, was paid.

55. Defendant Yale University's failure to compensate the Plaintiff for work she performed that was "equal" in terms of skill, effort, and responsibility, and performed under similar working conditions as her male colleague, Zackery Barker, constitutes a violation of the Equal Pay Act.

56. As a result of Yale University's violations of the Equal Pay Act, the Plaintiff has suffered damages.

**COUNT EIGHT: NEGLIGENT HIRING: as Against Defendant Yale University**

1. The Plaintiff incorporates paragraphs 1 through 40 into this Count Eight as though fully set forth herein.

41. Defendant Yale University hired Zackery Barker in 2022, and has been his employer since then.

42. Prior to being hired by Yale University, Barker was an employee of the Town of East Haven, Connecticut, and a union steward. His job title was Account Clerk.

43. In 2020, it came to light that during COVID Barker had received his salary from the Town of East Haven while simultaneously receiving unemployment benefits from the State of Connecticut Department of Labor.

44. Not only was Barker double dipping in pay and unemployment compensation, he encouraged others to do so as well.

45. Barker was investigated and interviewed by independent counsel hired by the Town of East Haven. The independent counsel concluded that Barker had impermissibly and unethically doubled dipped by receiving his pay from the Town while receiving unemployment benefits.

46. The independent counsel took a dim view of Barker's character and lack of candor during the investigation. As a result of the independent counsel's investigation findings, Barker was terminated from his position with the Town of East Haven.

47. The investigation and outcome were readily available online when Yale University hired Zackery Barker as an Account Assistant in the same department in which the Plaintiff was working.

48. Upon information and belief, Yale University failed to properly vet Zackery Barker, a person of demonstrated low character and propensity for subterfuge, prior to hiring him as an employee who would work on their campus amongst other employees and possibly students.

49. The vetting of Zackery Barker as a candidate for employment with Yale University was below the standard of care for screening candidates given their failure to investigate his

19

background and/or their willingness to hire him in spite of his history of unethical conduct.

50. As a result of Yale University negligently hiring Zackery Barker, the Plaintiff was repeatedly harassed, targeted and unethically defamed by Barker while working at Yale University. and the Plaintiff suffered damages.

51. Prior to hiring Zackery Barker, Yale University knew or in the exercise of reasonable care should have known, that Zackery Barker has a history of engaging in unethical conduct, including conduct similar to that which injured the Plaintiff.

52. Yale University failed to adequately investigate, vet, or screen, Zackery Barker during the hiring process, despite the existence of publicly available information about his history of unethical conduct.

53. The unethical actions of Zackery Barker, such as defaming the Plaintiff's work ethic and work quality, among other defamatory statements, were enabled by Yale's negligent hiring of Barker.

54. Yale University has and had a duty to its employees to properly vet new employees to ensure campus safety and a safe and fair workplace environment for its employees.

55. The actions of Zackery Barker, enabled by Yale's negligent hiring, caused foreseeable harm to the plaintiff.

56. As a direct and proximate result of Yale University's negligent hiring, Plaintiff suffered injuries and damages, including but not limited to emotional distress, reputational harm and other compensable losses.

## COUNT NINE: NEGLIGENT SUPERVISION: as Against Defendant Yale University

1. The Plaintiff incorporates paragraphs 1 through 50 of Count Eight into this Count Nine as

though fully set forth herein.

51. While Zackery Barkers has been employed by Yale University, it has failed to properly supervise and correct the repetitive, anti-social, harassing and threatening behaviors of Zackery Barker.

52. The following supervisory failures by Yale University are not limited to the following examples:

   a. Failing to correct and/or discipline Barker for defaming the Plaintiff;

   a. Failing to correct and/or discipline Barker for admitting to high level of hostility toward the Plaintiff when Barker admitted he "hated" the Plaintiff;

   b. Failing to correct and/or discipline Barker for telling other employees he wanted to sabotage the Plaintiff's work chair so she would "break her neck" and be out of work on leave;

   c. Failing to correct and/or discipline Barker for referring to the Plaintiff as "ghetto" and making racially inappropriate comments about her attire and appearance;

   d. Failing to correct and/or discipline Barker for corroborated harassment and inappropriate comments; and,

   e. Failing to correct and/or discipline Barker for violating internal control processes.

53. As a result of Yale University's failures to correct and/or discipline Zackery Barker, he continued his repeated anti-social, harassing and threatening conduct toward the Plaintiff causing her emotional distress which forced the Plaintiff to use FMLA to work on her mental health.

54. Yale University had and has a duty toward its employees, and the Plaintiff, to ensure safe workplace environment free from anti-social, harassing or threatening behavior from Zackery Barker.

55. As a result of Yale University failures to correct Zackery Barker's anti-social, harassing or threatening behavior toward the Plaintiff, the Plaintiff endured a hostile work environment and suffered damages.

56. At all relevant times, Defendant Yale University had a duty to supervise employee Zackery Barker.

57. The Defendant knew or reasonably should have known that Zackery Barker was engaging in or had a propensity to engage in conduct that posed a risk of harm to the Plaintiff.

58. The Defendant breached their duty of supervision by failing to monitor, discipline, or otherwise control the conduct of Zackery Barker.

59. The Plaintiff's injuries were a foreseeable result of Yales continuous failure to supervise.

60. As a direct and proximate result of Yale University's negligent supervision, Plaintiff suffered injuries and damages, including but not limited to emotional distress, reputational harm and other compensable losses.

**COUNT TEN: NEGLIGENT RETENTION: as Against Defendant Yale University**

1. The Plaintiff incorporates paragraphs 1 through 60 of Count Nine into this Count Ten as though fully set forth herein.

60. At all relevant times, Defendant Yale University continued to employ Zackery Barker after becoming aware or having reason to be aware of his anti-social, harassing and threatening behavior to the Plaintiff.

22

61.  Yale University knew or should have known that retaining Zackery Barker in this position posed a danger to others, including the Plaintiff.

62.  Despite this knowledge, Yale failed to take reasonable corrective action, including discipline, reassignment, or termination.

63. The Plaintiff's injuries were a foreseeable result of Yale's retention of Barker.

64. As a direct and proximate result of Yale University's negligent retention of Zackery Barker, Plaintiff suffered injuries and damages, including but not limited to emotional distress, reputational harm and other compensable losses.

**COUNT ELEVEN: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS: as Against Defendants Yale University**

1.  The Plaintiff incorporates paragraphs 1 through 40, paragraphs 1 through 64 of Count Ten into this Count Eleven as though fully set forth herein.

65. At all relevant times, Defendant Yale University employed Defendant Zackery Barker and was responsible for managing and policing his conduct in the workplace.

66. Yale University, through its actions and inactions, engaged in conduct that created an unreasonable risk of causing emotional distress to the Plaintiff.

67. It was foreseeable to Yale University that its conduct, including but not limited to the failure to address the persistent workplace harassment and threats by Barker and management's retaliation.  Yale University has, and had, a duty toward the Plaintiff and all employees to provide a safe workplace environments and knew that failure to do so would cause Plaintiff emotional distress.

68. Defendants acted negligently in failing to protect the Plaintiff from a hostile and abusive work environment.

69. As a direct result of Defendant's negligence, Plaintiff suffered emotional distress that was

23

severe enough to result in anguish, anxiety and depression and hypervigilance with physical symptoms of sleeplessness, loss of appetite, hives and restlessness.  The Plaintiff was diagnosed with Post Traumatic Stress Disorder related to her workplace environment at Yale University.

70. Yale University's actions and inactions were a proximate cause of the Plaintiff's emotional distress and as a result the Plaintiff has suffered damages.

**COUNT TWELVE:  DEFAMATION: as Against Defendant Zackery Barker:**

1.   The Plaintiff incorporates paragraphs 1 through 40 into this Count Twelve as though fully set forth herein.

41. At all relevant times, Zackery Barker was employed by Yale University and worked in proximity to Plaintiff in the Accounts Payable Department.

42. Beginning in or around October 2023, Defendant Zackery Barker made repeated false and defamatory statements about Plaintiff, both orally and in writing, to Yale management, to other Yale employees and/or to third parties.

43. These statements included knowingly false claims concerning Plaintiff's work performance and work quality, professionalism and conduct in the workplace.

44. Defendant Barker made these statements with actual malice or with reckless disregard for the truth, knowing that the statements were false or with serious doubts as to their truth.

45. These false statements were not privileged and were made outside the scope of any lawful purpose within the workplace environment at Yale University.

46. Defendant Barker's conduct constitutes defamation under Connecticut common law.

47. As a direct and proximate result of Defendant Barker's defamatory statements, Plaintiff suffered damage to her reputation, humiliation, emotional distress, and other damages.

**COUNT THIRTEEN: CONSTRUCTIVE DISCHARGE – Title VII: As against Yale University**

1. The Plaintiff incorporates all prior paragraphs into this Count Thirteen as though fully set forth herein.

2. The Plaintiff  repeatedly informed Yale University about, and it knew about, the intolerable conditions in the workplace environment that caused the Plaintiff to feel unsafe and unprotected from further anti-social behavior, threats and harassment by Zackery Barber, Yale University's knowing refusal to rectify the situation by monitoring, disciplining, terminating or otherwise controlling the conduct of Zackery Barker was a failure to protect the Plaintiff from Barker.

3. After learning that her email chains had been edited by someone with admin computer access at Yale University who deleted from an email chain an email authored by HRG Burbank which referenced a "safety plan" for the Plaintiff drafted by Burbank, the Plaintiff's sense of unease drastically increased.

4. A Reasonable person in the Plaintiff's position would have felt that the workplace environment was so unpleasant and difficult that they would be compelled to resign.

5. The Plaintiff felt compelled to resign and she did resign her position with Yale University.

6. As a result of her constructive discharge via resignation, the Plaintiff has suffered damages.

**COUNT FOURTEEN: CONSTRUCTIVE DISCHARGE – Connecticut FEPA: As against Yale University**

1. The Plaintiff incorporates paragraphs 1 through 84 of Count Thirteen into this Count Fourteen as though fully set forth herein.

25

85. Yale University intentionally created an environment wherein the Plaintiff felt unsafe and unprotected from further anti-social behavior, threats and harassment by Zackery Barber through its knowing refusal to rectify the situation by failing to monitor, discipline, terminate or otherwise control the conduct of Zackery Barker and protect the Plaintiff from him.

86. After learning that her email chains had been tampered with by someone with admin computer access at Yale University who deleted an email authored by HR personnelist Anna Burbank which referenced a "safety plan" for the Plaintiff, the Plaintiff's sense of unease drastically increased.

87. A Reasonable person in the Plaintiff's position would have felt that the workplace environment was so unpleasant and difficult that they would be compelled to resign.

88. The Plaintiff felt compelled to resign and she did resign her position with Yale University.

89. As a result of her constructive discharge via resignation, the Plaintiff has suffered damages.

**WHEREFORE**, the Plaintiff claims and petitions this Honorable Court for the following:

1) Compensatory money damages;

2) Double damages pursuant to Conn. Gen. Stat. § 31-68(a)(1)(A);

3) Reasonable attorney fees pursuant to Conn. Gen. Stat. § 31-68;

4) Reasonable attorney fees pursuant to Conn. Gen. Stat. § 46a-104;

5) Reasonable attorney fees pursuant to 42 U.S.C. § 2000e-5(k);

6) Reasonable costs of bringing this lawsuit pursuant to Conn. Gen. Stat. § 31-68(a)(1)(A);

26

7) Reasonable costs of bringing this lawsuit pursuant to Conn. Gen. Stat. § 46a-104;

8) Prejudgment interest on unpaid wages pursuant to Conn. Gen. Stat. § 37-3a;

9) Liquidated damages pursuant to Conn. Gen. Stat. § 31-72;

10) Punitive damages for willful, wanton or reckless defamation; and,

11) Such other relief as the court deems appropriate.

## JURY DEMAND AS TO ALL CLAIMS

### DEMAND TO PRESERVE EVIDENCE

Plaintiff hereby demands that the Defendant preserve all physical and electronic documents, things, and information relating in any way to Plaintiff's purchase of the forklift, to the Plaintiff's claims set forth herein, or to the defenses of same, including but not limited to any physical or electronic compilation of data, stored in any medium, from which information can be obtained either directly or, if necessary, after translation into a reasonably usable form, and shall include originals and all drafts, versions, and non-identical copies, as well as any associated meta-data, and shall further include information contained in emails, text messages, or on websites or in social media posts or communications, as well as any physical devices containing such information.

Failure to preserve documents, things, and information as demanded above will result in separate claims for spoliation of evidence, for appropriate adverse inferences, and for any other appropriate sanctions, and it <u>shall not be a defense</u> to such claims, inferences, or sanctions that Defendant lost access to documents, things, and information by trading in a phone or device in order to receive an upgraded phone or device.

Respectfully submitted,

The Plaintiff,
SHAWNDELL ASKEW,

By: __//s// Kay Wilson_____
Kay Wilson, Esq., Juris ct16084
Parrett Porto Parese & Colwell, PC
2319 Whitney Ave., Suite 1-D
Hamden, CT 06518
(203)281-2700  Tele.
(860)559-3733  Mobile
(203)281-0700  Fax
KWilson@PPPCLaw.com


CERTIFICATION:


     I hereby certify that on SEPTEMBER 16, 2025, a copy of the foregoing PLAINTIFFS' FIRST AMENDED COMPLAINT was filed electronically. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.


    __//s// Kay Wilson_____
Kay Wilson, Esq.

28