**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| SHAWNDELL ASKEW | . | CIVIL CASE NO. |
| Plaintiff, | . | 3:25-cv-01146 (JCH) |
| | . | |
| v. | . | |
| | . | |
| YALE UNIVERSITY and | . | |
| ZACKERY BARKER, | . | APRIL 28, 2026 |
| Defendants. | . | |

**RULING ON MOTION TO DISMISS (DOC. NO. 25)**

### I.    INTRODUCTION

The plaintiff, Shawndell Askew (hereafter, "Ms. Askew"), brings this action against Yale University (hereafter, "Yale") and its employee, Zackery Barker (hereafter, "Mr. Barker"), alleging that Yale violated the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60, by subjecting her to a hostile work environment, retaliating against her, and constructively discharging her.  See Amended Complaint ("Am. Compl.") (Doc. No. 21) at ¶¶ 49-54, 60-65, 85-89.[1]

Before the court is Defendant's Motion to Dismiss Counts two, four, and fourteen of the Amended Complaint.  See Defendant's Memorandum of Law in Support of Motion to Dismiss ("Def.'s Mem.") (Doc. No. 25).  Ms. Askew has not filed a Memorandum in Opposition to Yale's Motion to Dismiss.

For the reasons stated below, the court grants the Motion to Dismiss Counts two, four, and fourteen.

---

[1] A separate motion to dismiss was brought by Zackery Barker.  See Doc. No. 27.

## II.    BACKGROUND

### A.  Plaintiff's Alleged Facts

Ms. Askew has been employed by Yale University as an Account Assistant IV in the Accounts Payable Department since January 18, 2022.  In that role, she processed invoices for capital projects and was responsible for reporting discrepancies.  Am. Compl. at ¶¶ 11, 12.

Beginning in October 2023, Ms. Askew alleges that she was subjected to harmful comments based on her race (African American) and gender (female).  According to the Amended Complaint, these comments initially arose after she reported a co-worker, Matt Dean ("Mr. Dean"), to her supervisor, Nichelle Bass ("Ms. Bass"), for alleged unethical conduct.  Id. at ¶¶ 13, 14.  On January 11, 2024, Ms. Askew submitted a formal written complaint regarding Mr. Dean's conduct to Ms. Bass.  Id. at ¶ 16.  Thereafter, Mr. Dean began making alleged defamatory statements about Ms. Askew to her co-worker, Zackery Barker, describing her as "incompetent" and "behind in her work."  Id. at ¶ 17.

In January 2024, Ms. Askew learned that Mr. Barker was making the "same or similar defamatory statements" as Mr. Dean, about Ms. Askew.  In response, Ms. Askew reported the conduct to Ms. Bass, and Ms. Bass's upline manager, Rodney Brunson ("Mr. Brunson").  Ms. Askew requested a mediation with Mr. Barker to address the statements.  Id. at ¶ 19.  On April 3, 2024, the mediation was attended by both Ms. Askew and Mr. Barker along with Ms. Bass and Mr. Brunson.  In the mediation, Mr. Barker admitted to stating that he "could not stand" Ms. Askew, her "work ethic is poor," and that she "should be terminated."  Id. at ¶ 20.  The Amended Complaint alleges that

2

no resolution resulted from the mediation.  According to Ms. Askew, Ms. Bass and Mr. Brunson "treated the situation like a mere coworker squabble and told the plaintiff to try to get along with Barker."  Id. at 21.  Ms. Askew further alleges that Ms. Bass responded to a subsequent complaint by stating, "you're from the hood.  Just curse his ass out." Id. at ¶ 30.

Following the mediation, Ms. Askew alleges that her co-workers continued to approach her to report that Mr. Barker was continually making statements about her, including that Ms. Askew "engaged in excessive cell phone use and excessive smoke breaks," which led to Ms. Bass confronting Ms. Askew about the accusations.  Ms. Askew alleges that such comments were false.  Id. at ¶ 22.

On October 9, 2024, co-worker Shelby Witherspoon ("Ms. Witherspoon") informed Ms. Askew that Mr. Barker had made additional statements, including that he had "an obsession" with "taking [Ms. Askew] down," that she was "lazy" and "ghetto," and that she should be fired.  Ms. Witherspoon also reported that Mr. Barker stated he intended to loosen the wheels on Ms. Askew's chair so she would "break her neck" or be seriously injured.  Id. at ¶ 24.  Thereafter, Ms. Witherspoon was "shocked" when told that Ms. Askew was not under investigation.  Id. at ¶ 26.

Ms. Askew reported these statements to Ms. Bass on October 10, 2024.  Id. at ¶ 27.  Ms. Bass allegedly referred to Mr. Barker as her "problem child" and stated she had discussed the issue with Mr. Brunson and planned a meeting with Human Resources and Assistant Vice President Susannah Gobbi.  The Amended Complaint further alleges that Mr. Brunson later disclosed that Ms. Bass did not inform him of Ms. Witherspoon's report until significantly later than she had represented to Ms. Askew.  Id.

3

After Ms. Bass and Mr. Brunson allegedly failed to take further action, Ms. Witherspoon reported the conduct to Human Resources Generalist Anna Burbank ("Ms. Burbank"). Id. at ¶ 28. On October 21, 2024, a Zoom meeting occurred with Ms. Askew, her union representative, Ms. Burbank, and Ms. Bass; Mr. Brunson did not attend. At that meeting, Ms. Askew described ongoing harassment and requested a fully remote work arrangement due to safety concerns. Id. at ¶ 32. Although the request was initially denied, it was later approved by Mr. Brunson following advocacy by Ms. Askew's union representative. Id.

On November 7, 2024, Ms. Burbank informed Ms. Askew that the investigation had concluded and that its findings could not be shared. Mr. Barker received a verbal warning and a "safety plan" was drafted, requiring alternating in-person work schedules. Id. at ¶¶ 33, 34. In the days following the creation of the "safety plan," Mr. Barker violated this plan by coming into the office on Ms. Askew's assigned day. Id. at ¶ 34. Ms. Askew reported the violation to Ms. Burbank but "received no meaningful follow-up." Id. at ¶ 35.

Ms. Askew alleges that, due to the emotional and psychological toll of Mr. Barker's ongoing conduct, as well as Yale management's allegedly improper response, she took approved leave under the Family and Medical Leave Act from April 2025 through July 21, 2025. Id. at ¶ 38. Thereafter, Ms. Askew "felt compelled to resign and she did resign her position with Yale University," due to the alleged unpleasant and difficult workplace. Id. at ¶¶ 86, 87.

4

B. Procedural Background

Ms. Askew filed a Complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO") on November 8, 2024. See Id. at ¶ 56. The CHRO issued a Release of Jurisdiction on April 24, 2025, by email to the parties, including Ms. Askew. See Id. at ¶ 9; see also Exhibit 1. Ms. Askew responded to that email on April 29, 2025, acknowledging receipt of the Release of Jurisdiction. See Exhibit 2. On July 18, 2025, Ms. Askew filed her original Complaint with the court (Doc. No. 1). She returned the Summons and Complaint directed at Yale University to the court on August 7, 2025, stating that "Yale University [was] served on 8/4/2025." (Doc. No. 13). On September 16, 2025, Ms. Askew filed an Amended Complaint. See Am Compl.

The relevant claims at issue in Yale's partial Motion to Dismiss, arise under the Connecticut Fair Employment Practices Act ("CFEPA") and include Conn. Gen. Stat. § 46a–60(b)(1) for hostile work environment (see Id. at ¶¶ 49-54), Conn. Gen. Stat. § 46a–60(b)(4) for retaliation (see Id. at ¶¶ 60-65), and Conn. Gen. Stat. § 46a–60 for constructive discharge (see Id. at ¶¶ 85-89).

## III. LEGAL STANDARD

On a motion to dismiss, all factual allegations in a complaint must be accepted as true, and the court must draw all reasonable inferences in the plaintiff's favor. Harris v. Mills, 572 F.3d 66, 71, 72 (2d Cir.2009). "[A] motion to dismiss does not involve consideration of whether a plaintiff will ultimately prevail on the merits, but instead solely whether the claimant is entitled to offer evidence in support of his claims." Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 65 (2d Cir.2010) (citation and quotation marks omitted).

a. Rule 12(b)(1)

A "case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Nike, Inc. v. Already, LLC, 663 F.3d 89, 94 (2d Cir.2011), aff'd, 133 S.Ct. 721 (2013).  On a Rule 12(b)(1) motion, the plaintiff bears the burden of proving by a preponderance of the evidence that jurisdiction exists.  Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir.2008); Luckett v. Bure, 290 F.3d 493, 497 (2d Cir.2002). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court. . . .may refer to evidence outside the pleadings." Makarova v. United States, 201 F.3d 110, 113 (2d Cir.2000).  However, a court cannot rely on conclusory or hearsay evidence.  J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir.2004); In re Indicon, 499 B.R. 395, 400 (D.Conn. 2013).

Even in the absence of a Rule 12(b)(1) motion, federal courts have an independent obligation to ensure that subject matter jurisdiction exists and may raise the issue sua sponte at any stage of the proceedings.  See Gonzalez v. Option One Mortg. Corp., No. 3:12-CV-1470 CSH, 2014 WL 2475893 at *15 n.7 (D. Conn. June 3, 2014).

a. Rule 12(b)(6)

Alternatively, to withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "The

6

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

Reviewing a motion to dismiss under Rule 12(b)(6), the court liberally construes the pleading, accepts the factual allegations in a complaint as true, and draws all reasonable inferences in the non-movant's favor. See La Liberte v. Reid, 966 F.3d 79, 85 (2d Cir. 2020). However, the court does not credit legal conclusions or "[t]hreadbare recitals of the elements of a cause of action." Iqbal, 556 U.S. at 678. In deciding a motion to dismiss under Rule 12(b)(6), courts may consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993).

Both standards notwithstanding, a plaintiff's failure to oppose a motion to dismiss does not automatically result in dismissal; rather, the court must still evaluate the motion on its merits. See Goldberg v. Danaher, 599 F.3d 181, 183 (2d Cir. 2010). Accordingly, the court will conduct its analysis based on the pleadings and any properly considered evidence in the record.

## IV.   DISCUSSION

Yale University moves to dismiss Counts 2, 4, and 14 of the Amended Complaint pursuant to Rule 12(b)(1) of the Rules of Federal Procedure, "on the ground that they are time barred and, thus, the court lacks subject matter jurisdiction." Def.'s Mem. at 1.

Ms. Askew filed a Complaint with CHRO on November 8, 2024. Am. Compl. Count Three at 13. On April 24, 2025, the CHRO issued a Release of Jurisdiction by email to the parties, including Ms. Askew. See Am. Compl. ¶ 9; see also Exhibit 1. Ms.

7

Askew responded to that email on April 29, 2025, acknowledging receipt of the Release of Jurisdiction.  See Exhibit 2.  Ms. Askew subsequently filed her original Complaint with the court on July 18, 2025. (Doc. No. 1.)  Yale was electronically served a summons on July 31, 2025  (Doc. No. 11), and was served with a paper summons on August 4, 2025. (Doc. No. 13.)

Yale argues that Ms. Askew's claims under the CFEPA, Counts 2, 4, and 14, are time-barred on the ground that they were not brought within ninety days of receipt of the CHRO Release of Jurisdiction.  Def.'s Mem. at 1.  Section 46a-100 of the Connecticut General Statutes provides a private right of action to individuals who obtain a Release of Jurisdiction from the CHRO in accordance with section 46a-83.  Conn. Gen. Stat. §46a-100.  Section 46a-101(e) further provides that, "[a]ny action brought by the complainant in accordance with section 46a-100 shall be brought within ninety days of the receipt of the release from the commission."  Conn. Gen. Stat. §46a-101(e).  Ms. Askew's CFEPA claims are brought pursuant to section 46a–100 and are therefore subject to the ninety day limitation set forth in section 46a–101(e).  "Therefore, in order to be timely, the plaintiffs' CFEPA claims must have been brought within ninety days of release from the commission."  Hannah v. Wal-Mart Stores, Inc., No. 3:14-CV-01808 JCH, 2015 WL 3771699 at *3 (D. Conn. June 17, 2015).

a. Whether the Section 46a-101(e) Time Limitation is Jurisdictional or Mandatory

It must first be determined whether the ninety day time limitation of section 46a-101(e) is subject matter jurisdictional.  Yale argues that the matter concerns lack of subject matter jurisdiction (Motion at 1).  However, the Connecticut Supreme Court has held that the "ninety day time limitation for commencing an action in Superior Court

pursuant to section 46a-100 is mandatory and not jurisdictional." Sokolovsky v. Mulholland, 213 Conn. App. 128, 142 (2022).  The Supreme Court reasoned that, "in light of the strong presumption in favor of jurisdiction, we require a strong showing of a legislative intent to create a time limitation that, in the event of noncompliance, acts as a subject matter jurisdictional bar."  (Internal quotation marks omitted.)  Williams v. Comm'n on Human Rights & Opportunities, 257 Conn. 258, 267 (2001).  In the absence of such direct intent, mandatory time limitations "must be complied with absent waiver or consent by the parties, rather than subject matter jurisdictional, which would preclude any extension of time even by express waiver or consent."  Id. at 269 (quoting Federal Deposit Ins. Corp. v. Hillcrest Associates, 233 Conn. 153, 173 (1995)).  As such, the mandatory time limitations do not preclude a plaintiff from making an equitable tolling argument against dismissal of an action that was commenced after the statutory deadline.  Sokolovsky, 213 Conn. App. at 143.

Nonetheless, Ms. Askew did not submit an opposition to Yale's partial Motion to Dismiss and did not allege waiver, consent, or equitable tolling, nor does the record suggest any basis for excusing the untimely filing.  The court therefore turns to whether Ms. Askew's claims were timely brought.

b.  Whether Ms. Askew's Claims Were Timely Brought

Under Connecticut law, unless otherwise specified by the legislature, "a case is considered 'brought' for purposes of a statute of limitations on the date of service of the complaint upon the defendant."  Kotec v. Japanese Educational Institute of New York, 321 F.Supp.2d 428, 431 (D.Conn.2004); see also Sokolovsky, 213 Conn. App. at 146. As Ms. Askew's state law claims are brought under the district court's supplemental

9

jurisdiction, state court rules, not Rule 3 of the Federal Rules of Civil Procedure, will apply when determining whether Ms. Askew has brought her claim within the requisite time period.  See Kotec, 321 F.Supp.2d at 431; see Katsaros v. Serafino, 2001 WL 789322, at *2-*3 (D.Conn. Feb. 28, 2001) ("it is the source of the right sued upon, and not the ground on which federal jurisdiction over the case is founded, which determines the governing law.") The court therefore looks to the date of service to determine whether Ms. Askew timely brought her claims.

Application of these principles demonstrates that the claims are untimely.  It is undisputed that Ms. Askew received the Release of Jurisdiction on April 24, 2025.  Am. Compl. ¶ 9.[2]  The ninety-day period therefore expired on July 23, 2025 or, if measured from her April 29, 2025 acknowledgment, on July 28, 2025.  Ms. Askew did not serve Yale within either period.  Electronic service of the summons occurred on July 31, 2025 (Doc. No. 11), and service by paper summons occurred on August 4, 2025 (Doc. No. 13.) Under Connecticut law, service marks the date an action is "brought."  See Kotec, 321 F.Supp.2d at 431.  Both service dates fall outside the ninety-day limitations period under either calculation.[3]

Accordingly, Ms. Askew's CFEPA claims were not timely brought and are therefore barred.  Ms. Askew did not oppose Yale's Motion to Dismiss and has neither asserted nor established any basis for equitable tolling, waiver, or consent.  The record presents no compelling reason to excuse the untimely filing.  The mandatory time

---

[2] The docket sheet detailing the date of service is considered public record, and "it is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 75 (2d Cir. 1998), cert. denied, 525 U.S. 1103 (1999).

[3] Ms. Askew alleges that she served within 90 days, Am. Compl. ¶ 10.  However, her admitted date of receipt (April 24, 2025), plus 90 days, exceeds July 25, 2026.

limitation of section 46a-101(e) must be complied with, and Ms. Askew has failed to do so.

## V.    CONCLUSION

For the reasons stated above, Yale University's partial Motion to Dismiss Counts 2, 4, and 14 (Doc. No. 25) is granted.


**SO ORDERED.**

Dated at New Haven, Connecticut this 28th day of April 2026.


/s/ Janet C. Hall
Janet C. Hall
United States District Court Judge