**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| SHAWNDELL ASKEW | . | CIVIL CASE NO. |
| Plaintiff, | . | 3:25-cv-01146 (JCH) |
| | . | |
| v. | . | |
| | . | |
| YALE UNIVERSITY and | . | |
| ZACKERY BARKER, | . | APRIL 28, 2026 |
| Defendants. | . | |

**RULING ON MOTION TO DISMISS (DOC. NO. 26)**

## I.    INTRODUCTION

The plaintiff, Shawndell Askew ("Ms. Askew"), brings this suit against Yale University ("Yale") and their employee, Zackery Barker ("Mr. Barker"), alleging the defendant, Mr. Barker, published repeated false and defamatory statements about Ms. Askew to a third party.  Ms. Askew alleges she has suffered reputational damages and emotional distress.  See Amended Complaint ("Am. Compl.") (Doc. No. 21) at ¶¶ 41-47.[1]

Before the court is defendant's Motion to Dismiss Count Twelve of the Amended Complaint.  See Defendant's Motion to Dismiss ("Motion") (Doc. No. 26) and also Defendant's Reply Brief ("Reply") (Doc. No. 31).  Plaintiff opposes the Motion.  See Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss ("Opposition") (Doc. No. 28.)

For the reasons stated below, the court denies the Motion to Dismiss Count Twelve.

---

[1] A separate motion to dismiss was brought by Yale University.  See Doc. No. 25.

## II.    BACKGROUND

### a.  Plaintiff's Alleged Facts

Ms. Askew has been employed by Yale University as an Account Assistant IV in the Accounts Payable Department since January 18, 2022.  In this role, Ms. Askew was responsible for processing invoices for Yale's capital projects and ensuring the legitimacy of such documents.  If conflicting information was located, it was her responsibility to report the issue.  Am. Compl. at ¶¶ 11, 12.  Beginning in October 2023, Ms. Askew began experiencing alleged harmful comments from a co-worker, Matt Dean ("Mr. Dean"), after she had verbally reported him to her supervisor for engaging in unethical conduct in his role in the department.  Ms. Askew originally learned of Mr. Dean's comments from Mr. Barker.[2]  Id. at ¶ 17.  On January 11, 2024, Ms. Askew submitted a formal written complaint regarding Mr. Dean's conduct to her supervisor.  Id. at ¶¶ 14, 16.  Thereafter, Mr. Dean began making defamatory statements about Ms. Askew to her co-worker, Zackery Barker, describing her as "incompetent" and "behind in her work."  Id. at ¶ 17.

In January 2024, Ms. Askew learned that Mr. Barker was making the "same or similar defamatory statements" about Ms. Askew, as Mr. Dean ("same or similar comments").  In response, Ms. Askew reported the conduct to her supervisors, Nichelle Bass ("Ms. Bass") and Rodney Brunson ("Mr. Brunson").  Ms. Askew requested a mediation with Mr. Barker.  Id. at ¶ 19.  On April 3, 2024, the mediation was attended by

---

[2] The court notes that Mr. Barker misrepresents the facts stated by Ms. Askew in the Amended Complaint.  Am. Compl. at ¶ 17-19.  In his Motion, Mr. Barker asserts that his comments "were made directly to" Ms. Askew.  Motion at 5.  However, the Amended Complaint states that the referenced  "comment" made to Ms. Askew, belonged to Mr. Dean and not Mr. Barker.  Am. Compl. at ¶ 17.  Counsel is reminded that in a 12(b)(6) motion the judge must accept the plaintiff's factual allegations as true.

both Ms. Askew and Mr. Barker along with Ms. Bass and Mr. Brunson.  In the mediation, Mr. Barker admitted to stating that he "could not stand" Ms. Askew, her "work ethic is poor," and that she "should be terminated" ("mediation statements").  Id. at ¶ 20. No resolution of the situation resulted from this mediation.

Following the mediation, Ms. Askew alleges that her co-workers continued to approach her to report that Mr. Barker was continually making statements about her, including that "the plaintiff engaged in excessive cell phone use and excessive smoke breaks," which led to Ms. Bass confronting Ms. Askew about the accusations.  Ms. Askew alleges that such comments were false ("cell phone use and smoke break statements").  Id. at ¶ 22.

On October 9, 2024, co-worker Shelby Witherspoon ("Ms. Witherspoon") approached Ms. Askew to inform her of several comments made by Mr. Barker directly to Ms. Witherspoon about Ms. Askew.  Ms. Witherspoon stated that Mr. Barker had "an obsession" with "taking [Ms. Askew] down."  Mr. Barker called Ms. Askew "lazy" and "ghetto" to Ms. Witherspoon, claiming that Ms. Askew was under investigation and should be fired.  Additionally, Ms. Witherspoon stated that Mr. Barker had expressed that he intended to loosen the wheels on Ms. Askew's work chair so that she would "break her neck" or become seriously injured ("Ms. Witherspoon's comments").  Id. at ¶ 24.  Thereafter, Ms. Witherspoon was "shocked" when told that Ms. Askew was not under investigation.  Id. at ¶ 26.  After Ms. Askew had reported such comments to Ms. Bass and, with no action taken, Ms. Witherspoon reported Mr. Barker's comments to HRG Anna Burbank ("Ms. Burbank").  Id. at ¶ 28.  On November 7, 2024, Ms. Burbank informed Ms. Askew that the investigation had concluded, and that Ms. Burbank could not share her findings with Ms. Askew.  As a result of the investigation, Mr. Barker

3

received a verbal warning and a "safety plan" was drafted requiring the parties to work in person on alternating days.  Id. at ¶ 34.  In the days following the creation of the "safety plan", Mr. Barker violated this plan by coming into the office on Ms. Askew's assigned day.  Id. at ¶ 34.

Ms. Askew stated that, due to the emotional and psychological toll of the ongoing conduct by Mr. Barker and the alleged improper response by Yale management to the situation, Ms. Askew went on approved FMLA leave in April 2025 until July 21, 2025.  Id. at ¶ 38.

b.  Procedural Background

Ms. Askew filed her Complaint on July 18, 2025.  See Complaint (Doc. No. 1).  Under Count 12 of the Complaint, Ms. Askew claims that Mr. Barker made repeated false and defamatory statements about her to third parties.  Ms. Askew further alleges that such comments were done maliciously or with reckless disregard for the truth.  She asserts that, as a result of Mr. Barker's conduct, she has suffered reputational and emotional damages.  Ms. Askew contends that such actions constitute defamation under Connecticut common law.  See Am. Compl. at ¶¶ 41-47.

On September 16, 2025, Ms. Askew filed an Amended Complaint.  See Am Compl.  On October 9, 2025, Mr. Barker filed a Motion to Dismiss.  See Motion.  On October 30, 2025, Ms. Askew filed her Opposition to the Motion to Dismiss.  See Opposition.  On November 10, 2025, Mr. Barker filed his Reply to the Opposition.  See Reply.

### III.    LEGAL STANDARD

a. Rule 12(b)(6)

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.

Reviewing a motion to dismiss under Rule 12(b)(6), the court liberally construes the pleading, accepts the factual allegations in a complaint as true, and draws all reasonable inferences in the non-movant's favor.  See La Liberte v. Reid, 966 F.3d 79, 85 (2d Cir. 2020).  However, the court does not credit legal conclusions or "[t]hreadbare recitals of the elements of a cause of action."  Iqbal, 556 U.S. at 678.  In deciding a motion to dismiss under Rule 12(b)(6), courts may consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken."  Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993).

### IV.    DISCUSSION

A. Introduction

Mr. Barker has moved to dismiss Ms. Askew's common law claim of defamation (Count Twelve) for failure to state a claim upon which relief can be granted.  In Count Twelve, Ms. Askew alleges that Mr. Barker "made repeated false and defamatory statements about plaintiff" to third parties.  She further contends that, as a result of these statements, she "suffered damage to her reputation, humiliation, emotional

distress, and other damages." See Am. Compl. at ¶¶ 41–47.  Mr. Barker challenges this claim on grounds that Ms. Askew has "failed to allege a legally sufficient defamation claim under Connecticut law."  See Motion at 1.

"A defamatory statement is defined as a communication that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him. . . ." (citation omitted; internal quotation marks omitted).  NetScout Sys., Inc. v. Gartner, Inc., 334 Conn. 396, 410 (2020). "Defamation is comprised of the torts of libel and slander: slander is oral defamation and libel is written defamation."  Skakel v. Grace, 5 F. Supp. 3d 199, 206 (D. Conn. 2014).

To establish a prima facie case of defamation in Connecticut, a plaintiff must show that:  "(1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement."  Cweklinsky v. Mobil Chem. Co., 267 Conn. 210, 217 (2004).  "Each statement furnishes a separate cause of action and requires proof of each of the elements of defamation."  Gleason v. Smolinski, 319 Conn. 394, 431 (2015).  A defamatory statement is defined as a communication that tends to "harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him" (Internal quotation marks omitted).  Cweklinsky, 267 Conn. at 217;  see also Lizotte v. Welker, 45 Conn. Supp. 217, 220 (Super. Ct. 1996), aff'd, 244 Conn. 156 (1998).

Mr. Barker advances three arguments in support of his Motion to Dismiss:  that Ms. Askew's allegations are too vague to provide adequate notice; that the statements are expressions of opinion; and, that any statement that could be actionable is factually

true.  Motion at 4-6.  For the reasons discussed below, the court concludes that none of these arguments support dismissal of Count Twelve under Rule 12(b)(6).

    B.  <u>Notice Requirement</u>

Ms. Askew alleges four distinct defamatory statements made by Mr. Barker.  Mr. Barker refers to these as the "'same or similar' comments," the "mediation statements," the excessive "cell phone use and smoke breaks statements," and the "Ms. Witherspoon's comments."  Am. Compl. at ¶¶ 19, 20, 22, 24.  Mr. Barker argues that each alleged publication "fall[s] short of the requirements to adequately provide notice enabling [him] to defend himself."  Motion at 4.

Under Federal Rule of Civil Procedure Rule 8(e), the standards for pleadings are liberal.  Fed. R. Civ. P. 8(e).  The complaint need only "afford the defendant sufficient notice of the communications complained of to enable him to defend himself."  <u>Kelly v. Schmidberger,</u> 806 F.2d 44, 46 (2d Cir. 1986).  To meet this standard, Connecticut federal courts have repeatedly relied on <u>Abrahams v. Young & Rubicam,</u> 979 F. Supp. 122 (D. Conn. 1997) for their analysis of the notice requirement for defamation.  The court in <u>Abrahams</u> found that, to provide sufficient notice, a complaint must plead "*what* defamatory statements . . . . were made concerning the plaintiff, *when* they were made, [and] *to whom* they might have been made."  <u>Id</u>. at 128; <u>see</u> <u>also</u> <u>Stevens v. Helming</u>, 163 Conn. App. 241, 247 n.3, 135 A.3d 728, 732 n.3 (2016).

With respect to <u>Abrahams</u>' requirement that a complaint identify "what defamatory statements. . . .were made concerning the plaintiff," the court first addresses Mr. Barker's challenge to the sufficiency of the allegations.  <u>Id</u>.  Mr. Barker asserts that the allegations are "entirely unspecific and deprive [him] of notice sufficient for him to form a defense against the vague allegations."  Motion at 5.  As to his "same or similar"

7

argument, Mr. Barker contends that the asserted vagueness "creates a massive spectrum of content that is impossible for Mr. Barker to properly respond to or defend against." Id. He further argues that the excessive "cell phone use and smoke breaks statements" are pleaded only "generally and only by their meaning." Id. at 6.

Connecticut authority has recognized that "complaints which do not plead the allegedly defamatory statements in haec verba have in the past been held sufficient." Schmidberger, 806 F.2d at 46. The "central concern" is whether the complaint "afford[s] defendant sufficient notice of the communications complained of to enable him to defend himself" (citation omitted; internal quotation marks omitted). Id. The absence of verbatim recitation, therefore, does not, standing alone, render a pleading deficient if the substance of the communication is identified with sufficient clarity.

The second requirement articulated in Abrahams concerns when the alleged defamatory statements were made. Abrahams, 979 F. Supp. at 128. Mr. Barker contends that Ms. Askew "does not describe when the statements allegedly occurred," and he is "left to guess. . . .when [the statement] was allegedly said." Motion at 6. Federal courts have recognized, however, that at the pleading stage, approximate timeframes are sufficient to survive a motion to dismiss. In Imbruce v. Buhl, No. 3:15-CV-00554 (JAM), 2016 WL 2733097, at *8 (D. Conn. May 10, 2016), the court found that, by providing approximate timeframes through language such as "no later than" a certain date, "[t]he complaint is sufficiently specific for initial pleading purposes." Similarly, Ms. Askew provides approximate time periods for the alleged defamatory statements. Additionally, Mr. Barker acknowledges in his Motion to Dismiss that the "Ms. Witherspoon comment," "occurred sometime on or before October 9, 2024." Motion at 7. Accordingly, the court concludes that Ms. Askew has pled sufficient

8

information regarding when the alleged statements were made to satisfy the timing requirement of the notice standard.

The final requirement of <u>Abrahams</u> is that a complaint must identify "to whom [the statement] might have been made." <u>Abrahams</u>, 979 F. Supp. at 128.  Mr. Barker contends that Ms. Askew has not provided sufficient information, asserting, for example, that with respect to the excessive "cell phone use and smoke breaks statements," "Mr. Barker is left to guess. . . .[as] to which co-workers. . . .any of these statements were said." Motion at 6.  Connecticut courts have recognized that a plaintiff need not identify every individual recipient of an allegedly defamatory statement.  Identification of a defined group of recipients is sufficient to satisfy the "to whom" requirement at the pleading stage.  <u>Tax Data Sols., LLC v. O'Brien</u>, No. NNHCV106016263, 2013 WL 951151, at *10 (Conn. Super. Ct. Feb. 6, 2013) ("while the plaintiff does not specifically identify the individual employees to whom the statements were made, the identification of a particular group has been determined to be sufficient").  Here, Ms. Askew alleges that the statements were made to "Yale management, to other Yale employees, and/or to third parties," Am. Compl. at ¶ 42, which provides sufficient notice of the audience of the communications for purposes of Rule 12(b)(6).

The court concludes that the Amended Complaint satisfies the standard articulated in <u>Abrahams</u>.  Each allegedly defamatory statement is identified with sufficient specificity as to its content, the time frame, and the recipient(s).  <u>Schmidberger</u> provides that the allegations in a complaint must "afford the defendant sufficient notice of the communications complained of to enable him to defend himself." <u>Schmidberger</u>, 806 F.2d at 46.  Accepting the allegations as true and construing them in Ms. Askew's favor, the court concludes that the Amended Complaint provides Mr. Barker with

adequate notice of the claims asserted in Count Twelve to survive the Motion to Dismiss under Rule 12(b)(6).

C.  Distinguishing Opinion From Fact

Mr. Barker further argues that the alleged statements made by him, as stated in the Amended Complaint by Ms. Askew, are "Mr. Barker's opinions, which are not actionable defamation."  Motion at 7.  "A statement can be defined as factual if it relates to an event or state of affairs that existed in the past or present and is capable of being known. . . .  An opinion, on the other hand, is a personal comment about another's conduct, qualifications or character that has some basis in fact."  Goodrich v. Waterbury Republican-Am., Inc., 188 Conn. 107, 111 (1982).  Although the distinction can be somewhat nebulous, the important distinction between a statement of fact and an opinion is "whether ordinary persons hearing or reading the matter complained of would be likely to understand it as an expression of the speaker's or writer's opinion, or as a statement of existing fact."  Id. at 112.

In Connecticut, "a central feature of the analysis undertaken by virtually every court called on to distinguish opinion from fact involves a careful examination of the overall context in which the statement is made."  NetScout Sys., Inc. v. Gartner, Inc., 334 Conn. 396, 412 (2020).  Courts consider a variety of factors as part of this contextual analysis.  Although no uniform test exists, the relevant case law identifies a common set of considerations.  Id. at 414.  NetScout summarizes those factors as a three part test:  "(1) whether the circumstances in which the statement is made should cause the audience to expect an evaluative or objective meaning; (2) whether the nature and tenor of the actual language used by the declarant suggests a statement of

10

evaluative opinion or objective fact; and (3) whether the statement is subject to objective verification." Id.

Ms. Askew alleges that numerous defamatory statements, that is, were false statements of fact, were made by Mr. Barker, inter alia, that Ms. Askew was "under investigation" and that she "engaged in excessive cell phone use and excessive smoke breaks." Am. Compl. at ¶¶ 22, 24. Mr. Barker challenges these assertions, arguing that such comments "are merely statements of opinion without implication of underlying fact." Motion at 8. However, in reviewing the alleged comments in light of NetScout, it is clear that Ms. Askew has plausibly pled that such statements are those of a defamatory nature, not opinion.

With respect to the circumstances in which the statements were made, Ms. Askew alleges facts supporting the inference that listeners understood Mr. Barker's remarks as assertions of objective fact. Ms. Witherspoon, a co-worker of both parties, allegedly approached Ms. Askew to inform her that Mr. Barker had told her that Ms. Askew was "under investigation." Am. Compl. at ¶ 22. Ms. Witherspoon also reported that Mr. Barker "had 'an obsession' with 'taking [plaintiff] down,'" and stated that she "should be fired."[3] Id. These surrounding remarks provide more than sufficient context to reflect Mr. Barker's alleged "animus" toward Ms. Askew. Reply at 4. Most notably, Ms. Askew alleges that Ms. Witherspoon "was shocked to discover that plaintiff was not under investigation, contrary to what [Mr. Barker] had claimed." Am. Compl. at ¶ 26. Accepting the allegations as true, Ms. Witherspoon's reaction supports the inference

---

[3] The Amended Complaint also alleges that Mr. Barker referred to Ms. Askew as "lazy" and "ghetto." Am. Compl. at ¶ 24. At this stage, the court need not determine whether such statements are independently actionable and will permit them to proceed to discovery.

that the statements were understood as conveying an existing fact rather than a subjective opinion.

Ms. Askew further alleges that co-workers reported that Mr. Barker stated that Ms. Askew engaged in "excessive cell phone use and excessive smoke breaks," and that these accusations led Ms. Bass, Ms. Askew's supervisor, to confront her regarding the alleged conduct.  Am. Compl. at ¶ 24.  A supervisor's confrontation regarding these accusations supports the inference that the statements were understood by the recipient as factual representations concerning Ms. Askew's workplace conduct.

As to the nature and tenor of the language used, the alleged statements convey concrete descriptions of workplace conditions and conduct.  A statement that an employee is "under investigation" asserts a specific claim regarding her employment status.  Likewise, the allegation that Ms. Askew engaged in "excessive cell phone use and excessive smoke breaks" purports to describe particular workplace behavior.  Such statements describe identifiable circumstances and "impl[y] the underlying fact that the plaintiff. . . .engaged in the conduct that [she] denies."  Jase v. City of New Britain, No. HHBCV054007098, 2008 WL 5481284, at *5 (Conn. Super. Ct. Dec. 4, 2008).  Accordingly, at this stage, the allegations sufficiently plead statements capable of defamatory meaning.

The alleged statements are also capable of objective verification.  Whether Ms. Askew was "under investigation" is capable of confirmation or refutation through discovery.  The allegation that she engaged in "excessive cell phone use and excessive smoke breaks" likewise presents a claim that could be evaluated through evidence collection.  Statements that relate to verifiable events or conditions, and are capable of being proven true or false, constitute factual assertions rather than opinion.  Goodrich,

188 Conn. at 111 ("a statement can be defined as factual if it relates to an event or state of affairs that existed in the past or present and is capable of being known.")

Considering the circumstances surrounding the statements, the nature and tenor of the language used, and that the statements are capable of objective verification, Ms. Askew has plausibly alleged that Mr. Barker made actionable statements of fact about her. At this stage, accepting the allegations as true and drawing all reasonable inferences in her favor, the court rejects Mr. Barker's argument that the statements constitute nonactionable opinion.

D. Truthfulness as an Affirmative Defense

Mr. Barker asserts that any alleged defamatory statements made by him are "true as pleaded by plaintiff." Motion at 10. Under Connecticut law, "although it is true that for a claim of defamation to be actionable, the statement must be false. . . .and under the common law, truth is an affirmative defense to defamation. . . .the determination of the truthfulness of a statement is a question of fact for the jury. As a defense, truth provides protection against liability, but not against the expense and inconvenience of being sued." Skakel, 5 F. Supp. 3d at 207 (quoting Cweklinsky, 267 Conn. at 228-229). Procedurally, a defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion, but only "if the defense appears on the face of the complaint." Doe No. 1 v. Knights of Columbus, 930 F.Supp.2d 337, 350 (D.Conn., 2013). Here, Ms. Askew nowhere asserts that, in her action for defamation, that the statements were true. This argument is frivolous.

Mr. Barker argues that the comment that Ms. Askew "was 'behind in her work' or something similar is true." Motion at 10. Ms. Askew, however, has alleged that the work performed by Mr. Barker was undertaken "to cover some of the plaintiff's duties as

the plaintiff was covering an unfilled position ('Process Control System')." Am. Compl. at ¶ 6. Ms. Askew further alleges that she was "required [to] cover two full-time positions without additional compensation or overtime, whereas Mr. Barker was paid overtime and received higher hourly wages for assisting with plaintiff's coverage of these duties occasionally." Id. at ¶ 8. In light of these assertions, it would be premature for this court to consider at this stage whether the statement that Ms. Askew was "behind in her work" was an accurate representation of the circumstances. The issue therefore presents a factual dispute that is not appropriately resolved on a motion to dismiss.

Mr. Barker maintains that his alleged statement that Ms. Askew was under investigation "is true as pleaded by plaintiff." Motion at 10. In support, he asserts that both he and Ms. Askew were the subjects of the investigation. Id. Ms. Askew, however, specifically alleges that the investigation ultimately resulted in only "Mr. Barker receiv[ing] merely a verbal warning," making clear that it was Mr. Barker's conduct, not hers, that was under investigation. Am. Compl. at ¶ 34. Accepting the factual allegations in the Amended Complaint as true and drawing all reasonable inferences in her favor, the allegations support the inference that Ms. Askew was not the subject of the investigation. La Liberte, 966 F.3d at 85. The Amended Complaint provides no basis to conclude that Ms. Askew's conduct was under scrutiny, and the accuracy of the statement regarding her status presents a factual question that cannot be resolved on a pre-answer motion. As recognized in Doe No. 1, 930 F. Supp. 2d at 350, a defendant may raise an affirmative defense in a Rule 12(b)(6) motion only if the defense appears on the face of the complaint. The Amended Complaint contains no such basis here, and the truth of the alleged statement cannot be determined at the pleading stage.

14

E.  Alleged Abandonment of Claims

Furthermore, Mr. Barker argues that the "plaintiff fail[ed] to respond to [his] absolute truth defense to the 'under investigation' allegation."  Reply at 3.  He also contends that, by responding only to certain "references" in her Opposition, Ms. Askew "abandons her other references of alleged defamation."  Reply at 2.  Mr. Barker, however, has cited no cases supportive of his argument that a pleading must address every subsequently asserted claim.  At the motion to dismiss stage, an affirmative defense such as truth can be a basis for dismissing claims, even though there are several other bases to support the cause of action.

Mr. Barker does cite three cases in support of his position, however, none of these cases are of his argument as each was decided at a materially later stage of litigation, after an answer had been filed and discovery conducted.  See Leal, Inc. v. Twin City Fire Ins. Co., 573 F. Supp. 3d 648, 660-61 (D. Conn. 2021) (the defendant's Rule 12(c) motion for judgment on the pleadings is granted where plaintiff did not respond to the defense's argument in its opposition memorandum);  see also Rosado v. Potter, No. 3:04CV00758(PCD), 2007 WL 30864, at *8 (D. Conn. Jan. 4, 2007), aff'd, 295 F. App'x 423 (2d Cir. 2008) (granting the defendant's Rule 56 motion for summary judgment where plaintiff did not respond to the defense's argument in its opposition memorandum);  see Jackson v. Fed. Exp., 766 F.3d 189, 196 (2d Cir. 2014) (granting the defendant's Rule 56 motion for summary judgment when only a partial response to a motion for summary judgment is deemed an abandonment of the unmentioned claims).

Additionally, while Mr. Barker is correct that truth is an affirmative defense to defamation, he has provided no basis on which the court can dismiss Ms. Askew's

15

claims at such an early stage of litigation and where she has plausibly alleged a cause of action for defamation.  It is not a federal court's role to determine veracity at the motion to dismiss stage.  "Although it is true that for a claim of defamation to be actionable, the statement must be false; . . . . and under the common law, truth is an affirmative defense to defamation; . . . . the determination of the truthfulness of a statement is a question of fact for the jury.  As a defense, truth provides protection against liability, but not against the expense and inconvenience of being sued."  See Skakel, 5 F. Supp. 3d at 207 (quoting  Cweklinsky, 267 Conn. at 228-229).

F.  Elevation to Defamation Per Se

The court notes that Ms. Askew's Opposition to the Motion to Dismiss included an argument that "the plaintiffs claim may even support defamation per se."  Opposition at 4.  This claim was not alleged in the Amended Complaint.  Connecticut federal courts have long held that a "[p]laintiff cannot amend their Complaint by asserting new facts or theories for the first time in opposition to defendants' motion to dismiss."  Miley v. Hous. Auth. of City of Bridgeport, 926 F. Supp. 2d 420, 432 (D. Conn. 2013) (citation omitted; internal quotation marks omitted);  see also Schulz v. Medtronic, Inc., No. 3:21-CV-00414 (MPS), 2022 WL 503960, at *2 (D. Conn. Feb. 18, 2022) (the court refused to consider facts put forth by the plaintiff for the first time in opposition to a motion to dismiss);  see Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998) (the court held that an argument raised for the first time in opposition to a motion to dismiss is not properly before the court and will not be considered).  Ms. Askew's attempt to bolster her Amended Complaint by asserting a claim of defamation per se, which was not

16

alleged in the Amended Complaint, is improper.  The court, therefore, considers only

Ms. Askew's claim for defamation.[4]

## V.   CONCLUSION

For the reasons stated above, the court denies the Motion to Dismiss Count 12 of

the Amended Complaint (Doc. No. 26).


**SO ORDERED.**

Dated at New Haven, Connecticut this 28th day of April 2026.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge

---

[4] If Ms. Askew seeks to assert a claim of defamation per se, she may seek to amend her
Amended Complaint.